**<u>Exhibit A</u>**

**Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
------------------------------------------------------- x
In re:                                        :
                                              :        Chapter 11
                                              :
LBI MEDIA, INC., et al.,                      :        Case No. 18– _____ (      )
                                              :
            Debtors.¹                         :        (Joint Administration Requested)
                                              :
------------------------------------------------------- x
```

**INTERIM ORDER (I) AUTHORIZING DEBTORS**
**TO (A) OBTAIN POSTPETITION SENIOR SECURED**
**FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING**
**ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,**
**(III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) MODIFYING**
**THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of LBI Media, Inc. (the "Borrower") and its affiliated

debtors, each as a debtor and debtor-in-possession (collectively, the "Debtors") in the above

captioned cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364 and 507

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules

2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rules 2002-1(b) and 4001-2 of the Bankruptcy Local Rules for the District of

Delaware (the "Local Bankruptcy Rules"), seeking, among other things:

A.      authorization for the Borrower to obtain secured debtor-in-possession financing

(the "DIP Financing"), and for each direct and indirect subsidiary of Borrower that is a Debtor

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: LBI Media, Inc. (8901); Liberman Broadcasting, Inc. (8078); LBI Media Holdings, Inc. (4918); LBI Media Intermediate Holdings, Inc. (9635); Empire Burbank Studios LLC (4443); Liberman Broadcasting of California LLC (1156); LBI Radio License LLC (8905); Liberman Broadcasting of Houston LLC (6005); Liberman Broadcasting of Houston License LLC (6277); Liberman Television of Houston LLC (2887); KZJL License LLC (2880); Liberman Television LLC (8919); KRCA Television LLC (4579); KRCA License LLC (8917); Liberman Television of Dallas LLC (6163); Liberman Television of Dallas License LLC (1566); Liberman Broadcasting of Dallas LLC (6468); and Liberman Broadcasting of Dallas License LLC (6537).  The Debtors' mailing address is 1845 West Empire Avenue, Burbank, California 91504.

(each a "Guarantor" and collectively, the "**Guarantors**"; the Guarantors collectively with the Borrower, the "Loan Parties") to unconditionally guaranty, on a joint and several basis, the Borrower's obligations in connection with the DIP Financing, consisting of a superpriority senior secured multi-draw term loan credit facility (the "DIP Facility"), in an aggregate principal amount of up to $38 million (the "DIP Commitments"), all on the terms and conditions set forth in this interim order (the "Interim Order") and the DIP Documents (each as defined below), and on an interim basis, to borrow an aggregate principal amount not to exceed $10 million (the "Initial Draw");

B.      authorization for the Loan Parties to execute and enter into the Superpriority Senior Secured Debtor-in-Possession Credit Agreement, among the Borrower, the Guarantors, the lenders from time to time thereto (collectively, the "DIP Lenders"), and HPS Investment Partners, LLC, as administrative agent (the "DIP Agent" and, together with the DIP Lenders, the "DIP Secured Parties"), attached to the Motion as Exhibit B (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Credit Agreement" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, the Pledge Agreement and the Security Agreement (each as defined in the DIP Credit Agreement) (collectively, the "DIP Documents"))[2] and the other DIP Documents and to perform all such other and further acts as may be required in connection with the DIP Facility and the DIP Documents;

C.      the granting of adequate protection to (i) Wilmington Savings Fund Society, FSB, in its capacity as trustee (the "Prepetition First Lien Notes Trustee") for the benefit of the holders

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the DIP Credit Agreement.

(the "Prepetition First Lien Noteholders" and, together with the Prepetition First Lien Trustee, the "Prepetition First Lien Notes Parties") of the 10% Senior Secured Notes due 2019 (the "Prepetition First Lien Notes") issued by the Borrower pursuant to that certain Indenture, dated as of March 18, 2011 (as may be amended, restated, supplemented, or modified from time to time, the "Prepetition First Lien Indenture"), by and among the Borrower, the guarantors party thereto (the "Prepetition First Lien Guarantors"), HPS Investment Partners, LLC as Lead Holder and the Prepetition First Lien Notes Trustee and (ii) U.S. Bank National Association, in its capacity as trustee (the "Prepetition Second Lien Notes Trustee" and, together with the Prepetition First Lien Notes Trustee, the "Prepetition Trustees") for the benefit of the holders (the "Prepetition Second Lien Noteholders" and, together with the Prepetition Second Lien Notes Trustee, the "Prepetition Second Lien Notes Parties" and, together with the Prepetition First Lien Notes Parties, the "Prepetition Secured Parties") of the PIK Toggle Second Priority Secured Subordinated Notes due 2020 (the "Prepetition Second Lien Notes") issued by the Borrower pursuant to (a) that certain Indenture dated as of December 31, 2012 (as may be amended, restated, supplemented, or modified from time to time), by and among LBI Media, as issuer, the guarantor parties thereto, and the Prepetition Second Lien Notes Trustee, and (b) that certain Indenture, dated as of December 23, 2014 (as may be amended, restated, supplemented, or modified from time to time), by and among the Borrower, the guarantors party thereto (the "Prepetition Second Lien Guarantors"), and the Prepetition Second Lien Trustee (clauses (a) and (b) collectively, the "Prepetition Second Lien Indenture").

D.      subject to the restrictions set forth in the DIP Documents and this Interim Order, authorization for the Loan Parties to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties have an

interest and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of Cash Collateral and the other Prepetition Collateral;

E.      subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Prepetition Credit Documents (as defined below) and the liens and security interests arising therefrom;

F.      the granting of superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Secured Parties as well as liens, including priming liens, pursuant to section 364(d) of the Bankruptcy Code, as further described herein, on all prepetition and postpetition property of the Loan Parties' estates and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below));

G.      subject only to and effective upon entry of the Final Order, the waiver of the Debtors' right to surcharge the Prepetition Collateral and the Debtor Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

H.      subject only to and effective upon entry of the Final Order, that none of the DIP Agent, the DIP Lenders or the Prepetition First Lien Notes Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Debtor Collateral;

I.      modification of the automatic stay to the extent set forth herein and in the DIP Documents; and

J.      set the date for the hearing (the "Final Hearing") to consider on a final basis the Motion and the entry of a final order (the "Final Order") authorizing and approving the transactions described in the foregoing clauses.

4

K.     This Court having reviewed the Motion, the exhibits attached thereto, the *Declaration of Brian Kei in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), the *Declaration of Ronen Bojmel in Support of Motion of Debtors' for (I) Authority to (A) Obtain Postpetition Senior Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties, (D) Grant Liens and Superpriority Claims, (E) Modify the Automatic Stay, and (II) Granting Related Relief* (the "Bojmel Declaration"), and the evidence submitted at the interim hearing held on November [●], 2018 (the "Interim Hearing"); and adequate notice of the Motion and the Interim Hearing having been given under the circumstances; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest and is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Disposition.*  The relief requested in the Motion is granted on an interim basis as set forth herein.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.     *Debtor-in-Possession Operation.*  On November [●], 2018 (the "Petition Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its

properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      *Jurisdiction*.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      *Notice*.  Notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, for purposes of Bankruptcy Rule 6003.

5.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 22 and 23 below, the Debtors admit, stipulate and agree that:

(a)      Prior to the Petition Date, the Loan Parties were indebted and jointly and severally liable to the Prepetition First Lien Notes Parties in respect of the Prepetition First Lien Notes issued under the Prepetition First Lien Indenture (together with any ancillary documents, security agreements, guarantees, pledge agreements and notes issued in connection therewith, collectively, the "Prepetition First Lien Notes Documents") in the aggregate principal amount of not less than $233,000,000 plus all accrued but unpaid interest, fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith, including but

without duplication, the Applicable Premium (as defined in the Prepetition First Lien Indenture) (such obligations under the Prepetition First Lien Notes and the Prepetition First Lien Notes Documents, the "Prepetition First Lien Notes Obligations"), and the Borrower and the Prepetition First Lien Guarantors are unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Prepetition First Lien Notes Obligations.

(b)    To secure the Prepetition First Lien Notes Obligations, the Borrower and Prepetition First Lien Guarantors entered into various security and collateral documents pursuant to and in connection with the Prepetition First Lien Notes Documents, including the Intercreditor Agreement (as defined below) pursuant to which the Prepetition First Lien Trustee, for the benefit of itself and the Prepetition First Lien Noteholders, was granted or otherwise entitled to the benefit of valid, binding, perfected, enforceable, first-priority liens and security interests in the Prepetition Collateral (as defined below) (the "Prepetition First Lien Notes Liens").  The Prepetition First Lien Notes Liens provide the Prepetition First Lien Notes Trustee with valid, binding, perfected, enforceable, first-priority liens, and security interests in the Collateral (as defined in the Prepetition First Lien Indenture) (such Collateral, the "Prepetition Collateral") that are (i) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law and (ii) as of the Petition Date are subject and subordinate only to certain valid, perfected, and unavoidable liens that are senior to or *pari passu* with the liens of the Prepetition First Lien Notes Trustee and the Prepetition First Lien Noteholders on the Prepetition Collateral.

(c)    By virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition First Lien Notes Documents, none of the Prepetition First Lien Secured Parties control the Debtors or their properties or operations, have authority to

determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors.

(d)     The Loan Parties and the Prepetition Second Lien Notes Parties are party to the Prepetition Second Lien Indenture (together with any ancillary documents, security agreements, guarantees, pledge agreements and notes issued in connection therewith, collectively, the "Prepetition Second Lien Notes Documents" and, together with the Prepetition First Lien Notes Documents and the Intercreditor Agreement (as defined below) the "Prepetition Credit Documents"), which, as of the Petition Date, had an aggregate principal amount outstanding of $262,433,363 plus any accrued but unpaid interest, fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith (such obligations under the Prepetition Second Lien Notes and the Prepetition Second Lien Notes Documents, the "Prepetition Second Lien Notes Obligations" and, together with the Prepetition First Lien Notes Obligations, the "Prepetition Debt").  Pursuant to the Prepetition Second Lien Indenture, the Indebtedness (as defined in the Prepetition Second Lien Indenture) evidenced by the Prepetition Second Lien Notes is subordinated in right of payment to the prior payment in full of all Senior Debt (as defined in the Prepetition Second Lien Indenture), including, without limitation, the Prepetition First Lien Notes Obligations.

(e)     To secure the Prepetition Second Lien Notes Obligations, the Borrower and Prepetition Second Lien Guarantors entered into various security and collateral documents pursuant to and in connection with the Prepetition Second Lien Notes Documents, pursuant to which the Prepetition Second Lien Trustee, for the benefit of itself and the Prepetition Second Lien Noteholders, was granted valid, binding, perfected second-priority liens and security

interests in the Prepetition Collateral  (the "Prepetition Second Lien Notes Liens" and, together with the Prepetition First Lien Notes Liens, the "Prepetition Liens").

(f)    The Prepetition Debt constitutes the legal, valid, binding, non-avoidable and enforceable obligations of the Loan Parties, and the Prepetition Secured Parties have, or are the beneficiaries of, valid, binding, properly perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral.

(g)    All proceeds of the Prepetition Collateral and all cash and cash equivalent proceeds maintained in deposit or securities accounts subject to prepetition control agreements or otherwise within the control of the Prepetition Secured Parties, are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(h)    The Prepetition Secured Parties are subject to that certain Intercreditor Agreement dated December 23, 2014 (as amended, restated, supplemented or modified from time to time prior to the date hereof, the "Intercreditor Agreement"), pursuant to which the Prepetition Secured Parties set forth the respective priorities of the Prepetition Liens on the Prepetition Collateral.  Pursuant to section 2.1 of the Intercreditor Agreement, any lien on the Prepetition Collateral securing the Prepetition First Lien Notes Obligations held by or on behalf of the Prepetition First Lien Trustee or any Prepetition First Lien Noteholders shall have priority over and be senior in all respects and prior to any lien on the Prepetition Collateral securing any Prepetition Second Lien Notes Obligations.  Pursuant to section 2.3 of the Intercreditor Agreement, any liens on Prepetition Collateral held by Prepetition Second Lien Notes Parties that are not also subject to liens held by the Prepetition First Lien Trustee are deemed to be assigned to the Prepetition First Lien Trustee for the benefit of the Prepetition First Lien Notes

Parties (in accordance with the priorities set forth in the Intercreditor Agreement), solely to the extent provided for in the Intercreditor Agreement.

(i)     The Prepetition Second Lien Notes Parties' interest in the Prepetition Collateral pursuant to and in connection with the Second Lien Notes Documents are or shall be subject and subordinate to: (i) the DIP Liens, the Prepetition First Lien Notes Liens and the Prepetition First Lien Notes Adequate Protection Liens, (ii) the Carve-Out, to which the DIP Liens and the Prepetition First Lien Notes Adequate Protection Liens are subject; and (iii) valid, perfected and unavoidable liens permitted under the DIP Documents or the Prepetition Credit Documents.

(j)     The liens granted to the DIP Agent on behalf of the DIP Lenders shall be valid, enforceable and non-avoidable liens against the Loan Parties.

6.     *Findings Regarding the DIP Financing and Cash Collateral.*

(a)     Good and sufficient cause has been shown for the entry of this Interim Order.

(b)     The Loan Parties have an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral).  The Debtors' borrowings from the DIP Lenders under the DIP Facility will be used in a manner consistent with the terms and conditions of the applicable DIP Documents and this Interim Order for:  (i) working capital and other general corporate purposes of the Borrower and the Guarantors and their subsidiaries in accordance with the DIP Budget (as defined in the DIP Credit Agreement); (ii) payment of amounts due under the DIP Facility, including, without limitation, any adequate protection payments payable pursuant to this Interim Order, in accordance with the DIP Budget; (iii) payment of the professional fees and expenses of administering the Chapter 11 Cases

(including payments benefiting from the Carve-Out (as defined below)); and (iv) other purposes as expressly set forth in this Interim Order or the DIP Budget, or as approved by the DIP Agent or Required Lenders.  The Loan Parties' access to sufficient working capital through the use of Cash Collateral and other Prepetition Collateral and the incurrence of indebtedness under the DIP Facility are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties.

(c)    The Loan Parties are unable to obtain financing on terms more favorable than that offered by the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Loan Parties are also unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) on the terms and conditions set forth herein and granting the Adequate Protection Obligations (as defined below), in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)    Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations, and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)      The Prepetition Secured Parties have consented (or, where applicable, are deemed to have consented pursuant to the Intercreditor Agreement) to the use of Cash Collateral and the other Prepetition Collateral, the priming of the Prepetition Liens pursuant to section 364(d)(1) of the Bankruptcy Code, and the Debtors' entry into the DIP Documents in accordance with and subject to the terms of this Interim Order and the DIP Documents.

(f)      The DIP Financing, as well as the terms of the Adequate Protection Obligations, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the Prepetition First Lien Notes Parties, the DIP Agent, and the DIP Lenders and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (collectively, the "DIP Loans") and (ii) any "Obligations" (as defined in the DIP Credit Agreement) of the Loan Parties owing to the DIP Agent, any DIP Lender or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Agent or the DIP Lenders and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under this Interim Order, the Final Order or the DIP Documents (the foregoing in clauses (i) and (ii) collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and

12

the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition First Lien Notes Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition First Lien Notes Parties (and the successors and assigns thereof), and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

       (g)    The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in this Interim Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or

otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Bankruptcy Rule 4001-2(b). Absent granting the relief set forth in this Interim Order, the Loan Parties' estates will be immediately and irreparably harmed.   Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

7.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    The Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty the Borrower's obligations with respect to such borrowings, in an aggregate principal or face amount not to exceed $38 million under the DIP Term Facility, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and therein); *provided* that no more than $10 million shall be available to the Borrowers pending the entry of the Final Order.

(b)    In furtherance of the foregoing and without further approval of this Court, each Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be

reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

       (i)     the execution and delivery of, and performance under, each of the DIP Documents;

       (ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent, and the requisite DIP Lenders may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder, increase the aggregate commitments or the rate of interest payable thereunder, or otherwise materially modify, in a manner adverse to the Debtors, the terms of the DIP Documents;

       (iii)     the incurrence of, and the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees including, without limitation, the Upfront Fee, the Commitment Fee, the Exit Fee (each as defined in the DIP Credit Agreement) and the fee to the DIP Agent described in the DIP Credit Agreement (which fees shall be fully earned and approved upon entry of this Interim Order and shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case

15

referred to in the DIP Credit Agreement and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders, in each case, as provided for in the DIP Documents, shall be without the need to file retention or fee applications or to provide notice to any party, other than as provided in paragraph 14 hereof; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens as permitted herein and therein.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the DIP Documents and this Interim Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

8.    *DIP Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without

limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) (including the Prepetition 507(b) Claim (as defined below)) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "DIP Superpriority Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Loan Parties and all proceeds thereof (excluding the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"), but, subject only to and effective upon entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds")), subject only to payment of the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b)     For purposes hereof, the "Carve-Out" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses

17

incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 (without regard to the notice set forth in (iii) below); and (iii) (A) all paid and unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise of persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code or any official committee of unsecured creditors in the Chapter 11 Cases (collectively, the "Professional Fees") incurred at any time on or prior to the Trigger Date (as defined below), plus (B) Professional Fees incurred after the Trigger Date in an amount not to exceed $1,000,000 of professionals retained by the Debtors ((B), collectively with any paid and unpaid claims in (A), the "Carve-Out Cap"), in each case subject to the limits imposed by this Interim Order, the Final Order (if and when entered) or otherwise, on Professional Fees permitted to be incurred, including in connection with any permitted investigation of the claims, liens and defenses against any Prepetition First Lien Notes Party; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above on any other grounds.  "Trigger Notice" shall mean a written notice delivered by the DIP Agent describing the event of default that is alleged to continue under the DIP Documents (or after the payment in full of the DIP Obligations, the Prepetition First Lien Trustee describing the reason for termination of the use of Cash Collateral).  Immediately upon delivery of a Trigger Notice, and prior to the payment to any Prepetition Secured Party on account of any adequate protection or otherwise, the Debtors shall be required to deposit, in a segregated account not subject to the control of the DIP Agent or any Prepetition Trustee (the "Carve-Out Account"), an amount equal to the Carve-Out Cap.  The funds on deposit in the Carve-Out Account shall be available only to satisfy obligations

benefitting from the Carve-Out, and the DIP Agent and (i) each Prepetition Trustee, each on behalf of itself and the relevant secured parties, shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve-Out Account and (ii) the Prepetition First Lien Notes Trustee shall have a security interest upon any residual interest in the Carve-Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve-Out.

(c)     For purposes hereof, the "Trigger Date" shall mean the earlier of (i) the first business day after the occurrence of an Event of Default (as defined in the DIP Credit Agreement) after giving effect to any notice or applicable grace period set forth in the DIP Documents and (ii) the Maturity Date (as defined in the DIP Credit Agreement), but subject to delivery (including via email) of the Trigger Notice to the Borrower's lead restructuring counsel and the office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

(d)     Notwithstanding the foregoing, (i) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation (other than, prior to the Trigger Date, as permitted under paragraph 23 of this Interim Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the DIP Lenders, the DIP Agent, the Prepetition First Lien Noteholders or the Prepetition First Lien Trustee, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Prepetition Credit Documents, including without limitation the Prepetition First Lien Notes Obligations, (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the

Bankruptcy Code, applicable non-bankruptcy law or otherwise, (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent or the Prepetition First Lien Notes Parties hereunder or under the applicable DIP Documents or Prepetition Credit Documents, (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any Debtor Collateral or Prepetition Collateral in accordance with the DIP Documents, this Interim Order or the Final Order, other than to contest or defend against an assertion that an Event of Default has occurred or is occurring or an acceleration of the Obligations has occurred upon an Event of Default or to seek a determination that an Event of Default has not occurred or is not continuing, or (d) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of the Court and permitted under the DIP Documents, including the DIP Budget; and (ii) prior to the Trigger Date, the Carve-Out shall not be reduced by the payment or incurrence of Professional Fees allowed at any time by the Court.

9.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent of, or over, any Debtor Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Debtor Collateral**"**), subject only to the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "DIP Liens"):

(a)      First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively, "Unencumbered Property"), including, without limitation, any and all unencumbered cash of the Loan Parties and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than the Avoidance Actions, including, but subject only to and effective upon entry of the Final Order, the Avoidance Proceeds;

(b)      Priming Liens on Prepetition Collateral.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of each Loan Party (including, without limitation, any and all cash and cash collateral and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments,

securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, that is subject to the Prepetition Liens, which lien shall be senior in all respects to such Prepetition Liens.  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens granted hereunder);

(c)     <u>DIP Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party subject to valid, binding, and unavoidable liens that are otherwise senior to the Prepetition First Lien Notes Liens as of the Petition Date (the "<u>Senior Liens</u>"), if any; *provided* that, for the avoidance of doubt, any liens securing obligations owing to the Prepetition Second Lien Notes Parties shall not constitute Senior Liens; and

(d)     <u>DIP Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (i) subject or subordinate to (A) subject to entry of the Final Order, any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens of the Loan Parties or

security interests of the Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

      10.    *Protection of DIP Lenders' Rights.*

      (a)    So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such Debtor Collateral or the Adequate Protection Liens; (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Debtor Collateral unless, solely as to this clause (ii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date; and (iii) deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such Debtor Collateral subject to any sale or disposition.

      (b)    To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or Debtor Collateral or has control with respect to any Prepetition Collateral or Debtor Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or Debtor Collateral, then such Prepetition Secured

Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders, and the Prepetition Trustees shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

(c)     Prior to the satisfaction of the Obligations, any proceeds of Prepetition Collateral received by the Prepetition Trustees or any Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by the Prepetition Trustees (other than on account of the Adequate Protection Obligations) shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Agent is hereby authorized to make any such endorsements as agent for each of the Prepetition Trustees or any such Prepetition Secured Party.  This authorization is coupled with an interest and is irrevocable.

(d)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Agent and the DIP Lenders to enforce all of their rights under the DIP Documents and, subject to the terms of the DIP Documents, (i) immediately upon the occurrence of an Event of Default, declare upon notice to the Loan Parties (A) the termination, reduction or restriction of any further Commitment to the extent any such Commitment remains and (B) all Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, other than as required under the DIP Documents, and (ii) upon the occurrence of an Event of Default and the giving of five (5) business days' prior written notice (which shall

run concurrently with any notice required to be provided under the DIP Documents) via email to counsel to the Debtors, counsel to any official committee of unsecured creditors appointed in connection with the Chapter 11 Cases (the "Creditors' Committee"), and the U.S. Trustee to (A) withdraw consent to the Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law.  In any hearing regarding any exercise of rights or remedies under the DIP Documents, the only issues that may be raised by the Debtors and the Prepetition Secured Parties in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Prepetition Secured Parties hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  Subject only to and effective upon entry of the Final Order, in no event shall the DIP Agent, the DIP Lenders or the Prepetition First Lien Notes Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Debtor Collateral.  Further, subject only to and effective upon entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition First Lien Notes Parties.

(e)    No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) except as provided herein or in the Final Order, the terms of any other order or stipulation related to the

Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11.     *Limitation on Charging Expenses Against Collateral*.    Subject only to and effective upon the entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Debtor Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition First Lien Trustee, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or the Prepetition First Lien Trustee and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the Prepetition First Lien Trustee or the Prepetition First Lien Noteholders to any charge, lien, assessment or claim against the Debtor Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.     *Payments Free and Clear*.    Subject to the Carve-Out and pending entry of the Final Order with respect to section 506(c) of the Bankruptcy Code, any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of this Interim Order or Final Order (if and when entered) or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability, whether asserted or assessed by, through or on behalf of the Debtors.

13.     *Use of Cash Collateral*.    The Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order, to use all Cash Collateral and the Prepetition Secured Parties are directed promptly to turn over to the Loan Parties all Cash Collateral received or held

by them; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

14.    *Adequate Protection of Prepetition Secured Parties*.   The Prepetition First Lien Notes Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition First Lien Notes Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition First Lien Notes Parties' security interests and liens on the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Prepetition First Lien Notes Adequate Protection Claim").    The Prepetition Second Lien Notes Parties are entitled, pursuant to sections 361, 362, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Second Lien Notes Collateral in an amount equal to the aggregate diminution in the value of the Prepetition Second Lien Notes Parties' interests in the Prepetition Second Lien Notes Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Second Lien Notes

27

Collateral, the granting of the DIP Liens pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Prepetition Second Lien Notes Adequate Protection Claim" and, together with the Prepetition First Lien Notes Adequate Protection Claim, the "Prepetition Adequate Protection Claims").  In consideration of the foregoing, each of the Prepetition First Lien Trustee, for the benefit of the Prepetition First Lien Noteholders, and the Prepetition Second Lien Trustee, for the benefit of the Prepetition Second Lien Noteholders, are hereby granted, as applicable, the following (collectively, the "Adequate Protection Obligations"):

        (a)      Prepetition Adequate Protection Liens.  The Prepetition First Lien Trustee (for itself and for the benefit of the Prepetition First Lien Noteholders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition First Lien Notes Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the Debtor Collateral including, without limitation, Unencumbered Property and, subject to entry of the Final Order, the Avoidance Proceeds, in each case subject and subordinate only to (i) the DIP Liens and any liens to which the DIP Liens are junior, including the Senior Liens, if any, and (ii) the Carve-Out (the "Prepetition First Lien Notes Adequate Protection Liens").  The Prepetition Second Lien Trustee (for itself and for the benefit of the Prepetition Second Lien Noteholders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Second Lien Notes Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the Debtor

Collateral including, without limitation, Unencumbered Property and, subject to entry of the Final Order, the Avoidance Proceeds, in each case subject and subordinate only to (i) the DIP Liens, (ii) any prepetition liens that are senior in priority to the Prepetition Second Lien Notes Liens, including the Prepetition First Lien Notes Liens, (iii) the Prepetition First Lien Notes Adequate Protection Liens, and (iv) the Carve-Out (collectively, the "Prepetition Second Lien Notes Adequate Protection Liens" and, together with the Prepetition First Lien Notes Adequate Protection Liens, the "Adequate Protection Liens").  For the avoidance of doubt, the Prepetition Second Lien Notes Adequate Protection Liens shall be subordinated to the Prepetition First Lien Notes Adequate Protection Liens.

(b)    Prepetition Section 507(b) Claim.  The Prepetition First Lien Trustee (for itself and the benefit of the Prepetition First Lien Noteholders) is hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition First Lien Notes Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Prepetition 507(b) Claim"), which Prepetition 507(b) Claim shall have recourse to and be payable from all of the Debtor Collateral in accordance with the priorities set forth herein, including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds.  The Prepetition 507(b) Claim shall be subject and subordinate to the Carve-Out and the DIP Superpriority Claims.  Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition First Lien Notes Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as

to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims, including claims that benefit from the Carve-Out, have indefeasibly been paid in cash in full and all Commitments have been terminated.

(c)     Prepetition First Lien Notes Parties' Fees and Expenses.     Without duplication of amounts required to be paid pursuant to the DIP Documents, upon entry of this Interim Order, the Loan Parties shall pay in cash all fees, expenses, and disbursements payable to the Prepetition First Lien Notes Parties, including all fees, expenses, and disbursements payable to the Prepetition First Lien Trustee (including, without limitation, the fees and expenses of Morrison & Foerster LLP and Ashby & Geddes, P.A., in each case whether accrued prior to or after the Petition Date) and all professional fees and expenses of Prepetition First Lien Noteholders (including, with respect to the Prepetition First Lien Noteholders and without limitation, the fees and expenses of Paul, Weiss, Rifkind, Garrison & Wharton LLP, Evercore Group L.L.C., MoloLamken LLP, Orrick, Herrington & Sutcliffe LLP, and Young Conaway Stargatt & Taylor, LLP, in each case, whether accrued prior to or after the Petition Date).  The post-petition payment of the fees, expenses and disbursements set forth in the foregoing sentence, along with the professional fees and expenses of the DIP Secured Parties, shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Creditors' Committee (if any) and the U.S. Trustee (the "Review Period") of invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; *provided*, *however*,

that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail.  The Debtors, the Creditors' Committee (if any) and the U.S. Trustee may object to any portion of the Invoiced Fees (the "Disputed Invoiced Fees") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the applicable Prepetition First Lien Notes Parties and the applicable professional of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

(d)    Information Rights.  The Debtors shall provide the Prepetition First Lien Trustee, on behalf of itself and the Prepetition First Lien Noteholders, with any written financial reporting and other periodic reporting that is actually provided to the DIP Agent or the DIP Lenders under the DIP Credit Agreement.

15.    *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.

16.    *Consent to Adequate Protection; Right to Seek Additional Adequate Protection; No Admission*.  The Prepetition First Lien Noteholders have consented to the Adequate Protection Obligations, the priming of the Prepetition Liens by the DIP Liens, and the use of

Cash Collateral provided for herein; *provided*, however, that such consent is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Documents; and *provided*, *further*, that such consent shall be of no force and effect in the event this Interim Order is reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition First Lien Trustee and the Prepetition First Lien Noteholders) or the DIP Documents and DIP Facility as set forth herein are not approved.  The Adequate Protection provided to the Prepetition Secured Parties hereunder adequately protects the Prepetition Secured Parties as of the date hereof; *provided that* this Interim Order: (i) is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition First Lien Notes Parties to request additional or alternative forms of adequate protection from the Loan Parties, and the Loan Parties' and any other party in interest's right to object to such requests are hereby preserved; and (ii) shall not be deemed an admission, acknowledgement, or stipulation by the Prepetition First Lien Notes Parties that the Prepetition First Lien Notes Parties are in fact adequately protected by the terms and conditions of this Interim Order or otherwise following the date of this Interim Order.

17.     Pursuant to sections 6.1 and 6.3 of the Intercreditor Agreement, the Prepetition Second Lien Trustee (for itself and on behalf of the Prepetition Second Lien Noteholders) has been deemed to consent to the DIP Facility, DIP Liens, the DIP Superpriority Claims and Adequate Protection Obligations granted to the Prepetition First Lien Notes Parties and the Prepetition Second Lien Notes Parties with respect to the Common Collateral (as defined in the Intercreditor Agreement).

18.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, on behalf of the DIP Lenders or the Prepetition Secured Parties shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are

hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)    Notwithstanding anything to the contrary in the Motion, the DIP Documents or this Interim Order, for purposes of this Interim Order, in no event shall the Debtor Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract or agreement or other property right to which any Debtor is a party, or any such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (x) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of any Debtor therein or (y) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts or agreements or other property rights are collectively referred to as the "Specified Contracts"); *provided* that the DIP Liens, Prepetition First Lien Notes Adequate Protection Liens, DIP Superpriority Claims, and Prepetition 507(b) Claim shall in all events attach to and have recourse from all proceeds, products, offspring or profits from any and all Specified Contracts (including from the sale, transfer, disposition or monetization thereof).

19.    *Proceeds of Subsequent Financing*.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Chapter 11 Cases or any successor Cases, shall obtain credit or incur debt

pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the repayment in full in cash of all DIP Obligations and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such financing is secured by any Debtor Collateral, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent, for the benefit of itself and the DIP Lenders, to be applied as set forth the DIP Documents, except as provided under such plan (if applicable).

20.    *Preservation of Rights Granted Under This Interim Order.*

(a)    Other than the Carve-Out and other claims and liens expressly granted or permitted by this Interim Order and the DIP Documents, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding.  No lien or security interest shall be granted to any other party in any of the Specified Contracts without first granting such lien or security interest to the DIP Agent, the DIP Lenders or the Prepetition First Lien Notes Parties (solely with respect to the Adequate Protection Obligations), as applicable.

(b)    Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered:  (i) the DIP Superpriority Claims, the Prepetition 507(b) Claim, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority

Claims, Prepetition 507(b) Claim, DIP Liens, and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall, to the extent permitted by applicable law, retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent, the Prepetition First Lien Trustee or the Prepetition Second Lien Trustee as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred or granted by any Loan Party to or for the benefit of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent, the Prepetition First Lien Trustee or the Prepetition Second Lien Trustee, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations, and Adequate Protection Obligations.

(d)    Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Debtor Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order (including the Carve-Out) and the DIP Documents shall continue in full force and effect until the entry of the Final Order or the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

21.    *Cash Management*.  Unless otherwise agreed by the DIP Agent, the Debtors shall maintain their cash management arrangements in all material respects in a manner consistent

with that described in the applicable "first-day" order and the related motion seeking authorization to continue the Debtors' cash management arrangements.

22.      *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, and agreements contained in this Interim Order, including, without limitation, in paragraph 5 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, and agreements contained in this Interim Order, including, without limitation, in paragraph 5 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 22) by no later than (i) (x) with respect to parties in interest with requisite standing other than the Creditors' Committee, 75 calendar days after entry of this Interim Order and (y) with respect to the Creditors' Committee, 60 calendar days after the appointment of the Creditors' Committee, if any, (ii) any such later date as has been agreed to, in writing, by the Prepetition First Lien Trustee (with the consent of the Required Holders (as defined in the Prepetition First Lien Indenture)) or the Prepetition Second Lien Trustee, as applicable, and (iii) any such later date as has been ordered by the Court for

cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of any of the Prepetition Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against any of the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Credit Documents, the Prepetition Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If (i) no such Challenge is timely and properly filed during the Challenge Period, or (ii) the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, and agreements contained in this Interim Order, including, without limitation, those contained in paragraph 5 of this Interim Order, shall be binding on all parties in interest, including, without limitation, the Creditors' Committee (if any); (b) the obligations of the Loan Parties under the Prepetition Credit Documents, including the Prepetition

Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens on the Prepetition Collateral, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Credit Documents shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, and agreements contained in this Interim Order, including, without limitation, those contained in paragraph 5 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases, including the Creditors' Committee (if

any), and on any other person or entity, except to the extent that such stipulations, admissions, and agreements were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee (if any) or any non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Documents, the Prepetition Debt or the Prepetition Liens.

23.    *Limitation on Use of DIP Loans and Debtor Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, Debtor Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Guarantor, any official committee appointed in the Chapter 11 Cases, or any trustee appointed in the Chapter 11 Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP Agent, the DIP Lenders, or the Prepetition First Lien Notes Parties, Prepetition Second Lien Notes Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt, the Prepetition First Lien Notes Obligations, the Prepetition Second Lien Notes Obligations, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the adequate protection obligations, adequate protection liens and superpriority claims granted to the Prepetition First Lien Notes Parties and the Prepetition Second Lien Notes Parties, as applicable, under the Interim Order or the Final Order, as

41

applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition First Lien Notes Obligations, Prepetition Second Lien Notes Obligations, the DIP Obligations and/or the liens, claims, rights, or security interests granted under this Interim Order, the Final Order, the DIP Documents, the Prepetition First Lien Notes Documents or Prepetition Second Lien Notes Documents including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided*, however, advisors to any Creditors' Committee may investigate any potential challenges with respect to the Prepetition First Lien Notes Documents, the Prepetition First Lien Notes Obligations, the Prepetition First Lien Notes Liens, Prepetition Second Lien Notes Documents, the Prepetition Second Lien Notes Obligations, and the Prepetition Second Lien Notes Liens during the Challenge Period at an aggregate expense for such investigation, but not litigation, prosecution, objection or challenge thereto, not to exceed $50,000 in the aggregate; (ii) to prevent, hinder, or otherwise delay the Prepetition First Lien Notes Parties', Prepetition Second Lien Notes Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization on the Prepetition First Lien Notes Obligations, Prepetition Second Lien Notes Obligations, Prepetition Collateral, DIP Obligations, Debtor Collateral, and the liens, claims, and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Prepetition First Lien Notes Documents, the Prepetition Second Lien Notes Documents or this Interim Order or the Final Order, other than, and subject to the notice period set forth in paragraph 10(d) hereof, to contest or defend against an assertion that an Event of Default has occurred or is occurring or an acceleration of the Obligations has occurred upon an Event of Default or to seek a determination that an Event of Default has not occurred or is not continuing;

or (iii) to seek to modify any of the rights and remedies granted to the Prepetition First Lien Notes Parties, the DIP Agent or the DIP Lenders under this Interim Order, the Prepetition First Lien Notes Documents or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the Debtor Collateral or any portion thereof that are senior to, or on parity with, the Carve-Out or the DIP Liens, DIP Superpriority Claims, adequate protection liens, and superpriority claims granted to the Prepetition First Lien Notes Parties unless all DIP Obligations, Prepetition First Lien Notes Obligations, adequate protection obligations, and claims granted to the DIP Agent, DIP Lenders, or Prepetition First Lien Notes Parties under this Interim Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the Required Lenders (as defined in the DIP Credit Agreement); or (v) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Required Lenders (as defined in the DIP Credit Agreement) or are otherwise included in the DIP Budget.

24.    *Loss or Damage to Collateral.*    Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender or any of the Prepetition First Lien Notes Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  The DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Debtor Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding

agency or other person, and all risk of loss, damage or destruction of the Debtor Collateral shall be borne by the Loan Parties.

25.     *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, on the one hand, and the DIP Documents or any other order entered by this Court, on the other hand, the provisions of this Interim Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to and any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the DIP Budget.

26.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition First Lien Notes Parties, and the Debtors and their respective successors and assigns; *provided* that the DIP Agent, the DIP Lenders, and the Prepetition First Lien Notes Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors).

27.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

28.    *No Standing Granted.*  Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors' Committee appointed in these Chapter 11 Cases, if any, standing or authority to pursue any challenge or other cause of action belonging to the Debtors or their estates with respect to the Prepetition First Lien Notes Documents, the Prepetition First Lien Notes Obligations, Prepetition Second Lien Notes Documents or the Prepetition Second Lien Notes Obligations.

29.    *No Waiver.*  No delay or failure by the Prepetition First Lien Notes Parties, the DIP Agent or any DIP Lender in the exercise of its rights and remedies under the DIP Documents or this Interim Order, as applicable, shall constitute a waiver, in whole or in part, of any of such agent's or DIP Lender's or noteholder's rights hereunder or otherwise.

30.    *Proofs of Claim*.  The Prepetition First Lien Trustee shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself and the Prepetition First Lien Notes Parties for payment of the Prepetition First Lien Notes Obligations arising under the Prepetition First Lien Notes Documents, including, without

limitation, the Applicable Premium and any principal, unpaid interest, fees, expenses, and other amounts under the Prepetition First Lien Notes Indenture.  The statements of claim in respect of the Prepetition First Lien Notes Obligations set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  The stipulations of the Debtors set forth in paragraph 5 hereof shall be deemed to constitute a timely filed proof of claim for the Prepetition First Lien Trustee in respect of all Prepetition First Lien Notes Obligations.  In addition, the Prepetition First Lien Trustee will not be required to file any request for allowance and/or payment of any administrative expenses, and this Interim Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition First Lien Notes Obligations constituting administrative expenses, as applicable.  The Prepetition Second Lien Trustee shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Second Lien Notes Parties for payment of the Prepetition Second Lien Notes Obligations arising under the Prepetition Second Lien Notes Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Second Lien Indenture.  The statements of claim in respect of the Prepetition Second Lien Notes Obligations set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  The stipulations of the Debtors set forth in paragraph 5 hereof shall be deemed to constitute a timely filed proof of claim for the Prepetition Second Lien Trustee in respect of all Prepetition Second Lien Notes Obligations.  In addition, the Prepetition Second Lien Trustee will not be required to file any request for allowance and/or

46

payment of any administrative expenses, and this Interim Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Second Lien Notes Obligations constituting administrative expenses, as applicable.

31.    *Insurance*.  To the extent that the Prepetition First Lien Trustee is listed as loss payee under the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in the order of priorities set forth herein.

32.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

33.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

34.    *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Debtor Collateral, receives any Debtor Collateral or any proceeds of Debtor Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity

47

shall be deemed to have received, and shall hold, any such payment or proceeds of Debtor Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

35.    *Credit Bidding*.    (a) The DIP Agent shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the Debtor Collateral and (b) subject to paragraph 22 hereof and entry of the Final Order, the Prepetition First Lien Notes Parties shall have the right to credit bid up to the full amount of the Prepetition First Lien Notes Obligations in connection with any sale of any Debtor Collateral pursuant to section 363 of the Bankruptcy Code, a sale plan of reorganization or liquidation under section 1129 of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

36.    *Bankruptcy Rules*.    The requirements of Local Bankruptcy Rule 4001-2 and Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

37.    *Necessary Action*.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

38.    *Retention of Jurisdiction*.    The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding

the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

      39.    *Final Hearing*.  The Final Hearing is scheduled for _____, 2018 at _____ __.m. before this Court.

      40.    *Objections*.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon:  (i) the Debtors, 1845 West Empire Avenue, Burbank, California 91504 (Attn: Kim Zeldin, Esq.); (ii) (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Ray C. Schrock, P.C., and Garrett A. Fail, Esq.), and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.); (iii) counsel for the DIP Agent, the DIP Lenders, and the Prepetition First Lien Noteholders, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Paul M. Basta, Esq., Jeffrey D. Saferstein, Esq., and Sarah Harnett, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Pauline K. Morgan, Esq., and M. Blake Cleary, Esq.); (iv) counsel for the Prepetition First Lien Trustee, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attn: Jonathan I. Levine, Esq.) and Ashby & Geddes, P.A. 500 Delaware Avenue, 8th Floor, Wilmington DE, 19801 (Attn: William P. Bowden); (v) counsel for the Prepetition Second Lien Trustee, Maslon LLP, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402 (Attn:  Brian J. Klein, Esq.); (vi) Office of the United States Trustee, 844 N. King Street, Room 2207, Lockbox 35, Wilmington DE, 19801 (Attn: David L. Buchbinder); and (vii) if any statutory committee has been appointed in the

Chapter 11 Cases, counsel to such committee, in each case to allow actual receipt by the foregoing no later than [__], 2018 at 4:00 p.m., prevailing Eastern Time.

41.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court, and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated: _____, 2018        _____
       Wilmington, Delaware                UNITED STATES BANKRUPTCY JUDGE