## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
                                                         :
In re                                                    :        Chapter 11
                                                         :
LBI MEDIA, INC., et al.,                                 :        Case No. 18-12655 (CSS)
                                                         :
                                  Debtors.¹              :        (Jointly Administered)
                                                         :
-------------------------------------------------------- x        Re: Docket Nos. 45, 325 & 326
```

## ORDER (I) APPROVING THE DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING CONFIRMATION HEARING, (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of LBI Media, Inc. and its debtor affiliates, as

debtors and debtors in possession in the above-captioned chapter 11 cases (collectively,

the "**Debtors**"), for entry of an order (i) approving the form and manner of notice and hearing to

consider the proposed disclosure statement for the Debtors' plan of reorganization, (ii) approving

the proposed disclosure statement as containing adequate information pursuant to section 1125 of

the Bankruptcy Code, (iii) scheduling a hearing (the "**Confirmation Hearing**") to consider

confirmation of the proposed plan of reorganization of the Debtors, (iv) approving the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: LBI Media, Inc. (8901); Liberman Broadcasting, Inc. (8078); LBI Media Holdings, Inc. (4918); LBI Media Intermediate Holdings, Inc. (9635); Empire Burbank Studios LLC (4443); Liberman Broadcasting of California LLC (1156); LBI Radio License LLC (8905); Liberman Broadcasting of Houston LLC (6005); Liberman Broadcasting of Houston License LLC (6277); Liberman Television of Houston LLC (2887); KZJL License LLC (2880); Liberman Television LLC (8919); KRCA Television LLC (4579); KRCA License LLC (8917); Liberman Television of Dallas LLC (6163); Liberman Television of Dallas License LLC (1566); Liberman Broadcasting of Dallas LLC (6468); and Liberman Broadcasting of Dallas License LLC (6537). The Debtors' mailing address is 1845 West Empire Avenue, Burbank, California 91504.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

solicitation procedures for the proposed plan, and (v) approving the confirmation procedures for the proposed plan pursuant to sections 105, 502, 1125, 1126, and 1128 of title 11 of the Bankruptcy Code, Rules 2002, 3003, 3017, 3018, 3020, and 9006 of the Bankruptcy Rules and Rules 2002-1, 3017-1, and 9006-1 of the Local Rules, all as more fully set forth in the Motion [D.I. 45], as amended by subsequent filings of the Debtors; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and all objections to the Motion having been withdrawn, resolved or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND AND DETERMINED THAT:**

A.    Notice of the Disclosure Statement Hearing and Disclosure Statement Objection Deadline.  The procedures proposed in the Motion providing notice to all parties of the time, date, and place of the hearing to consider approval of the proposed disclosure statement (the "**Disclosure Statement Hearing**") and the deadline for filing objections to the proposed disclosure statement, provide due, proper, and adequate notice, comport with due process and

2

comply with Bankruptcy Rules 2002 and 3017 and Local Rules 2002-1, 3017-1, and 9006-1.  No further notice is required.

B.      The Disclosure Statement.  The proposed disclosure statement [D.I. 326] (the "**Proposed Disclosure Statement**") contains adequate information within the meaning of section 1125 of the Bankruptcy Code.  No further information is necessary.

C.      Balloting and Voting Procedures.  The procedures set forth in the Motion for the solicitation and tabulation of votes to accept or reject the proposed plan [D.I. 325] (the "**Proposed Plan**") provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

D.      Ballots.  The ballots substantially in the forms annexed hereto as **Exhibit 2-1**, **2-2**, and **2-3** (collectively, the "**Ballots**"), including all voting instructions provided therein, are consistent with Official Bankruptcy Form No. B 314, address the particular needs of these chapter 11 cases, and provide adequate information and instructions for each individual entitled to vote to accept or reject the Proposed Plan.  No further information or instructions are necessary.

E.      Parties Entitled to Vote.  Pursuant to the Proposed Plan, holders of Claims in Class 3 (First Lien Notes Claims), Class 4 (Second Lien Notes Claims), Class 5 (HoldCo Unsecured Notes Claims), Class 6 (Intermediate HoldCo Unsecured Notes Claims), Class 7 (ASCAP/BMI Settlement Claims), Class 8 (Ongoing Trade Claims), and Class 9 (General Unsecured Claims), are impaired under the Proposed Plan.  Accordingly, holders of Allowed Claims in such classes are entitled to vote on account of such Claims.

F.      Parties Not Entitled to Vote.  Pursuant to the Proposed Plan, holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 10

3

(Intercompany Claims), and Class 12 (Intercompany Interests) are unimpaired and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Proposed Plan and are not entitled to vote on account of such Claims.  Further, holders of Claims in Class 11 (Existing LBI Parent Interests) are impaired and are not entitled to receive or retain property under the Plan.  Accordingly, pursuant to section 1126(g) of the Bankruptcy Code such holders are deemed to reject the Proposed Plan and are not entitled to vote on account of such claims.

G.      <u>Notices of Non-Voting Status</u>.  The Notices of Non-Voting Status, substantially in the forms attached hereto as **<u>Exhibit 3</u>** and **<u>Exhibit 4</u>**, comply with the Bankruptcy Code, applicable Bankruptcy Rules, and applicable Local Rules and, together with the Confirmation Hearing Notice, provide adequate notice to Non-Voting Creditors and Interest Holders of their non-voting status.  No further notice is necessary.

H.      <u>Solicitation</u>.  The proposed distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and Local Rule 9006-1 and constitute sufficient notice to all interested parties of the Record Date, Voting Deadline, Plan Objection Deadline, Confirmation Hearing, and other related matters.

I.      The period proposed by the Debtors in the Motion during which the Debtors may solicit votes to accept or reject the Proposed Plan is a reasonable and sufficient period of time for the Voting Classes to make an informed decision regarding whether to accept or reject the Proposed Plan and timely return Ballots evidencing such decision.

J.      <u>Notice of Confirmation Hearing and Plan Objection Deadline</u>.  The procedures set forth in the Motion regarding notice to all parties of the time, date, and place of the hearing to consider confirmation of the Proposed Plan (the "**Confirmation Hearing**") and

for filing objections or responses to the Proposed Plan, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002 and 3017 and Local Rule 9006-1.  No further notice is required.

        K.    <u>Notice</u>.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto and of all matters pertinent to the Confirmation Hearing.  No further notice is required.

        L.    <u>Relief is Warranted</u>.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED THAT**:

1.    The Motion is granted as set forth herein.

**Disclosure Statement**

2.    The Proposed Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is **APPROVED**.

3.    All objections, if any, to the Proposed Disclosure Statement or Disclosure Statement procedures that have not been withdrawn or resolved as provided for in the record of the Hearing are overruled.

4.    The form and manner of the notice of the hearing on the Proposed Disclosure Statement complied with all applicable Bankruptcy Rules and Local Rules.

5.    The Disclosure Statement (including all applicable exhibits thereto) provides sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Proposed Plan, in accordance with Bankruptcy Rule 3016(c).

RLF1 20661097V.1

**Solicitation and Voting Procedures**

*Temporary Allowance / Disallowance of Claims*

6.     Solely for purposes of voting to accept or reject the Proposed Plan and not for the purpose of the allowance of, or distribution on account of, a Claim or Interest, and without prejudice to the rights of the Debtors in any other context, each Claim or Interest within a Class of Claims or Interests entitled to vote to accept or reject the Proposed Plan is temporarily Allowed in an amount equal to the amount of such Claim or Interest either as set forth in the Schedules or in a properly and timely filed proof of claim, subject to the following exceptions:

(a)     as of the Voting Record Date, such creditor's Claim relates to a debt or obligation that the Debtors have already paid or otherwise satisfied;

(b)     if a proof of claim was filed by the Voting Record Date in an amount that is liquidated, non-contingent, and undisputed such Claim shall be temporarily Allowed for voting purposes in the amount set forth on the proof of claim, unless such Claim is disputed as set forth in subparagraph (g) below;

(c)     if a Claim has been estimated or otherwise Allowed for voting purposes by order of this Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by this Court;

(d)     if a Claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for the filing of proofs of claim established by the Court; or (ii) deemed timely filed by an order of the Court prior to the Voting Record Date; such Claim shall be disallowed for voting purposes; *provided*, *however*, if the applicable bar date has not yet passed, such Claim shall be allowed in the amount of one dollar ($1.00) for voting purposes;

(e)     if a proof of claim was filed by the Record Voting Date in an amount that is wholly contingent or unliquidated, such Claim shall be accorded one vote and valued temporarily in the amount of one dollar ($1.00), unless such Claim is disputed as set forth in subparagraph (g) below;

(f)     if a Claim is listed in the Schedules or on a proof of claim filed by the Voting Record Date as contingent, unliquidated, or disputed in part, such Claim shall be temporarily Allowed in the amount of the non-contingent, liquidated, or undisputed portion of such Claim, unless such Claim is disputed as set forth in subparagraph (g) below;

(g)    if the Debtors have filed an objection to or a request for estimation of a Claim at least **ten (10) calendar days** before the Voting Deadline (as such date may be extended by order of the Court or on request by the Debtors), such Claim is temporarily disallowed, except as ordered by the Court before the Voting Deadline; *provided*, *however*, that, if the Debtors' objection seeks to reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified, except as may be ordered by this Court before the Voting Deadline;

(h)    with respect to the First Lien Notes Claims, Second Lien Notes Claims, HoldCo Unsecured Notes Claims, and Intermediate HoldCo Unsecured Notes Claims (together, the "**Notes Claims**"), the Debtors shall be entitled to rely on the amounts of such Claims as set out in the register of holders as maintained by each of such holders' respective indenture trustee or nominee;

(i)    with respect to Interests, the Debtors shall be entitled to rely on the amount of such Interests set out in the register of holders as duly maintained by, or on behalf of, Liberman Broadcasting, Inc.; and

(j)    notwithstanding the above, any person or entity that was required to timely file a proof of claim in the form and manner specified by Bar Date Order and who failed to do so on or before the Bar Date associated with such claim shall not, with respect to such claim, be treated as a creditor of the Debtors for the purposes of voting on the Proposed Plan.

7.    **March 4, 2019 at 12:00 p.m. (prevailing Eastern Time)** (the "**Rule 3018(a) Motion Deadline**") shall be the deadline for the filing and serving of any motion requesting temporary allowance of a Claim for purposes of voting pursuant to Bankruptcy Rule 3018(a) (the "**Rule 3018(a) Motion(s)**"). Rule 3018(a) Motions must be filed with the Court and served on the Notice Parties so as to be **actually received** not later than the Rule 3018(a) Motion Deadline.

8.    With respect to certain of the Notes Claims, held by holders registered directly with the applicable indenture trustee (the "**Registered Holders**"), solely for voting purposes, the voting amounts of those Claims shall be the amounts set forth on the books and records of the applicable indenture trustee as of the Voting Record Date. With respect to Notes

Claims held by brokers, banks, commercial banks, trust companies, dealers, or other agents or nominees (collectively, the "**Nominees**") on behalf of the underlying beneficial holders (the "**Beneficial Holders**"), solely for voting purposes, the voting amounts of those Claims shall be the amounts set forth on the books and records of the applicable Nominee as of the Voting Record as evidenced by the securities position report from the Depository Trust Company ("**DTC**").  To the extent that there are any directly registered holders of applicable Notes Claims, the indenture trustee must provide a register of such holders in electronic Microsoft Excel format to the Debtors no later than one (1) business day following the Voting Record Date.

9.      If the Debtors elect to implement an Alternative Transaction, the Debtors shall file and serve a notice announcing such election by no later than **February 15, 2019**.

10.      Nothing in this Order shall affect or limit any party's rights to object to any Proof of Claim or Rule 3018(a) Motion.

11.      Each creditor or Interest holder that votes to accept or reject the Proposed Plan is deemed to have voted the full amount of its Claim or Interests therefor.

### *The Voting Record Date*

12.      The Voting Record Date shall be set as **January 22, 2019**.  Only holders of Claims and Interests as of the Voting Record Date shall be entitled to vote to accept or reject the Proposed Plan.

13.      The record holders of Claims shall be determined, as of the Voting Record Date, based upon the records of the Debtors and Epiq.  Accordingly, any notice of claim transfer received by the record holder of the Debtors' debt securities, the Debtors, Epiq, or other similarly situated registrar after the Voting Record Date shall not be recognized for purposes of voting or receipt of the Proposed Plan confirmation materials.

14.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is entitled to vote with respect to the Proposed Plan, cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date; or (ii) the transferee files by the Voting Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer; and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Proposed Plan made by the holder of such Claim as of the Voting Record Date.

*Solicitation Packages*

15.     The Solicitation Packages are **APPROVED**.

16.     The Debtors shall mail the Solicitation Packages no later than **February 4, 2019** (the "**Solicitation Date**") to the U.S. Trustee and holders of Claims in the Voting Classes entitled to vote on the Proposed Plan as of the Voting Record Date, as required by Bankruptcy Rule 3017(d).

17.     Solicitation Packages shall contain a copy of:

 a.  this Order (without attachments);

 b.  the Confirmation Hearing Notice;

 c.  a Ballot for the applicable Class and holder; and

 d.  a USB flash drive containing the Proposed Plan and Proposed Disclosure Statement.

With the consent of the Debtors, not to be unreasonably withheld, or upon further order of the Court, the Solicitation Package may contain a letter from the Official Committee of Unsecured Creditors (the "**Committee**") appointed in these cases setting forth the

Committee's views with respect to the Plan, including any recommendation by the Committee regarding whether unsecured creditors should vote in favor or against confirmation of the Plan.

18.    Any creditor may request an additional copy of the Disclosure Statement (and attachments) in electronic format on a USB flash drive or paper format by telephone or by written request.  Upon receipt of a telephonic or written request, the Debtors will provide such creditor with a paper copy of the Proposed Plan and the Disclosure Statement at no cost to the creditor within five (5) days thereafter.

19.    The Debtors shall not be required to send Solicitation Packages to creditors that have Claims that have already been paid in full; *provided*, *however*, that if any such creditor would be entitled to receive a Solicitation Package for any other reason, then the Debtors shall send such creditor a Solicitation Package in accordance with the procedures set forth herein.

20.    With respect to addresses from which Solicitation Packages are returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Proposed Plan to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the Voting Deadline, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Proposed Plan to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.

### *Notices of Non-Voting Status*

21.    The Notices of Non-Voting Status are **APPROVED**.

RLF1 20661097V.1

22.     To the holders of Claims and/or Interests in Non-Voting Classes, the Debtors shall send the applicable Notice of Non-Voting Status substantially in the forms attached hereto as **Exhibit 3** and **Exhibit 4**.

*Ballots*

23.     The Ballots, substantially in the form attached hereto as **Exhibit 2-1**, **2-2**, and **2-3** are **APPROVED**.

24.     The Debtors are authorized to make non-substantive changes to the Ballots and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Ballots and any other materials in the Solicitation Packages prior to mailing.

25.     **The Voting Deadline shall be March 4, 2019 at 5:00 p.m. (prevailing Eastern Time).**

26.     All Ballots must be properly executed, completed, and delivered to Epiq by first-class mail, overnight courier, or hand delivery so that they are **actually received** by Epiq no later than the Voting Deadline.  In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors are hereby authorized to accept Ballots from holders of Claims in Class 7 (ASCAP/BMI Settlement Claims), Class 8 (Ongoing Trade Claims), and Class 9 (General Unsecured Claims) via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by Epiq (the "**E- Ballot Portal**").  To the extent there are any Registered Holders of Notes Claims, the Debtors are also authorized to accept Ballots from these holders via the E-Ballot Portal.  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the E-Ballot Portal (which allows a holder to submit an electronic

11

signature).  If applicable, instructions for electronic, online transmission of Ballots will be set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  In addition, with respect to Notes Claims, Nominees may return their Master Ballots via electronic mail to lbimedia@epiqglobal.com.

27.    With respect to Ballots that will be sent to certain holders of Notes Claims, entitled to vote on the Proposed Plan, the Debtors propose to deliver Ballots to record holders of such Claims, including, without limitation, the Nominees.  Once the Voting Record Date has passed, the Debtors will cause to be distributed, to each Nominee, reasonably sufficient numbers of Solicitation Packages, including sufficient Beneficial Ballots (the "**Beneficial Ballots**"), to distribute via first class mail to the Beneficial Holders of such Claims as of the Voting Record Date for whom such Nominee acts.  The Debtors will also cause a Master Ballot (as defined below) to be distributed to each Nominee for use in tabulating votes cast on Beneficial Ballots submitted to such Nominee (as described more fully below).  If it is a Nominee's customary and accepted practice to forward the solicitation information to (and collect votes from) Beneficial Holders by voter information form ("**VIF**"), e-mail, telephone or other customary means of communication, the Nominee may employ that method of communication in lieu of sending the paper Beneficial Ballot and/or Solicitation Package.

28.    Such Nominees shall, upon receipt of the Solicitation Packages, promptly distribute such Solicitation Packages to Beneficial Holders including Beneficial Ballots (or a summary thereof) using one of the following two methods (to be selected by the Nominee) within five (5) business days of receipt of the Solicitation Packages:

(a)   **Pre-Validated Ballots**:  The Nominee may "pre-validate" a Beneficial Ballot by (i) signing the Beneficial Ballot; (ii) indicating on the Beneficial Ballot the amount and the account number of the Claims held by the Nominee for the Beneficial Holder; and (iii) forwarding such Beneficial Ballot, together with the Disclosure Statement, a pre-addressed, postage-paid return envelope addressed to, and provided by, Epiq and other materials requested to be forwarded, to the Beneficial Holder for voting. The Beneficial Holder must then complete the information requested in the Beneficial Ballot, and return the Beneficial Ballot directly to Epiq in the pre-addressed, postage-paid return envelope so that it is RECEIVED by Epiq on or before the Voting Deadline.  A list of the Beneficial Holders to whom "pre-validated" Beneficial Ballots were delivered should be maintained by Nominees for inspection for at least one (1) year from the Voting Deadline.

(b)   **Master Ballots**: If the Nominee elects not to pre-validate Beneficial Ballots, the Nominee may obtain the votes of Beneficial Holders by forwarding to the Beneficial Holders the unsigned Beneficial Ballots, VIF, e-mail, or other customary method of collecting votes from a Beneficial Holder, together with the Disclosure Statement, a pre-addressed, postage-paid return envelope provided by, and addressed to, the Nominee, and other materials requested to be forwarded.  Each such Beneficial Holder must then indicate his, her, or its vote on the Beneficial Ballot, complete the information requested on the Beneficial Ballot, review the certifications contained on the Beneficial Ballot, execute the Beneficial Ballot, and return the Beneficial Ballot to the Nominee.  If it is the accepted practice for a Nominee to collect votes through a VIF, e-mail, or other customary method of communication, the Beneficial Holder shall follow the Nominee's instruction for completing and submitting its vote to the Nominee.  After collecting the Beneficial Holders' votes, the Nominee should, in turn, complete a master ballot (the "**Master Ballot**") compiling the votes and other information from the Beneficial Holders, execute the Master Ballot, and deliver the Master Ballot to Epiq so that it is RECEIVED by Epiq on or before the Voting Deadline.  All Beneficial Ballots returned by Beneficial Holders should either be forwarded to Epiq (along with the Master Ballot) or retained by Nominees for inspection for at least one (1) year from the Voting Deadline.  EACH NOMINEE SHOULD ADVISE ITS BENEFICIAL HOLDERS TO RETURN THEIR BENEFICIAL BALLOTS TO THE NOMINEE BY A DATE CALCULATED BY THE NOMINEE TO ALLOW IT TO PREPARE AND RETURN THE MASTER BALLOT TO EPIQ SO THAT IT IS RECEIVED BY EPIQ ON OR BEFORE THE VOTING DEADLINE.[3]

---

[3] Notwithstanding the foregoing, Nominees are authorized to transmit Solicitation Packages and collect votes to accept or to reject the Proposed Plan from Beneficial Holders in accordance with their customary practices,

*Tabulation Procedures*

29.    The following tabulation procedures are **APPROVED**.

(a)    Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Bankruptcy Court, unless the Ballots being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation of the Proposed Plan.

(a)    Whenever a holder of a Claim or Interest casts more than one Ballot voting the same Claim(s) or Interest(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such holder's intent, and thus, to supersede any prior Ballot.

(b)    Whenever a holder of a Claim or Interest casts a Ballot that is properly completed, executed and timely returned to Epiq, but does not indicate either an acceptance or rejection of the Proposed Plan, the Ballot will not be counted.

(c)    Whenever a holder of a Claim or Interest casts a Ballot that is properly completed, executed, and timely returned to Epiq, but indicates both an acceptance and a rejection of the Proposed Plan, the Ballot will not be counted.

(d)    A holder of a Claim or Interest shall be deemed to have voted the full amount of its Claim or Interest in each Class and shall not be entitled to split its vote within a particular Class.  Any Ballot that partially accepts and partially rejects the Proposed Plan will not be counted.

(e)    Whenever a holder of a Claim or Interest casts Ballots received by Epiq on the same day, but which are voted inconsistently, such Ballots will not be counted.

(f)    The following Ballots shall not be counted:

    i.    Any Ballot received after the Voting Deadline, unless the Debtors, after consultation with the Committee, shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

    ii.    Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant or interest holder;

---

including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

iii.  Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Proposed Plan;

iv.  Any Ballot cast by a person who is not entitled to vote, even if such individual holds a Claim or Interest in a Voting Class;

v.  Any unsigned Ballot;

vi.  Any Ballot which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.  Any Ballot transmitted to Epiq by means not specifically approved herein.

(g)  If a Ballot is being signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by Epiq, the Debtors, or the Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, authorized signatories should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

(h)  A holder of Claims or Interests in more than one Class must use separate Ballots for each Class of Claims or Interests.

(i)  The Debtors, after consultation with the Committee, but subject to contrary order of the Bankruptcy Court, may waive any defect or irregularity as to any particular Ballot at any time, either before or after the close of voting, and any such waiver shall be documented in the Voting Certification.

(j)  Neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Certification, nor will any of them incur any liability for failure to provide such notification; provided that such information shall be provided to the Committee upon request.

(k)  Unless waived by the Debtors, subject to contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted.

(l)  The Debtors, after consultation with the Committee, are authorized to enter into stipulations or other agreements with the holder of any Claim or Interest agreeing to the amount of a Claim or Interest for voting purposes.

15

(m)    Any ballot cast by holders on account of Claims in Class 3 (First Lien Notes Claims) and Class 4 (Second Lien Notes Claims) will only be counted for LBI Media and the Subsidiary Debtors.

(n)    Any ballot cast by holders on account of Claims in Class 5 (HoldCo Unsecured Notes Claims) will only be counted for Debtor LBI Media Holdings, Inc.

(o)    Any ballot cast by holders of on account of Claims in Class 6 (Intermediate HoldCo Unsecured Notes Claims) will only be counted for Debtors LBI Media Intermediate Holdings, Inc. and LBI Media Holdings, Inc.

30.    In addition to the foregoing generally applicable voting and ballot tabulation procedures, the following procedures shall apply to holders of Notes Claims who hold their position through a Nominee:

(a)    if a Beneficial Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested, must submit proper evidence satisfactory to the Debtors of authority to so act. Authorized signatories should submit the separate Beneficial Ballot of each Beneficial Holder for whom they are voting;

(a)    any vote returned to a Nominee by a Beneficial Holder (whether transmitted by Beneficial Ballot or other customary means of submitting a vote) will not be counted for purposes of acceptance or rejection of the Plan until such Nominee properly completes and delivers to the Epiq that Beneficial Ballot (properly validated) or a Master Ballot casting the vote of such Beneficial Holder;

(b)    if a Beneficial Holder holds Claims in Class 3 (First Lien Note Claims), Class 4 (Second Lien Note Claims), Class 5 (HoldCo Unsecured Notes Claims), and Class 6 (Intermediate HoldCo Unsecured Notes Claims) through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Beneficial Ballot and each such Beneficial Holder should execute a separate Beneficial Ballot for each block of Claims in Class 3 (First Lien Note Claims), Class 4 (Second Lien Note Claims), Class 5 (HoldCo Unsecured Notes Claims), and Class 6 (Intermediate HoldCo Unsecured Notes Claims) that it holds through any Nominee and must return each such Beneficial Ballot to the appropriate Nominee;

(c)    votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees in Class 3 (First Lien Note Claims), Class 4 (Second Lien Note Claims), Class 5 (HoldCo Unsecured Notes Claims), and Class 6 (Intermediate HoldCo Unsecured Notes Claims), as of the Voting Record Date, as evidenced by the applicable securities position report(s) obtained from DTC. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Claims held by such Nominee as of the Voting Record Date;

(d)    if conflicting votes or "over-votes" are submitted by a Nominee pursuant to a Master Ballot, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominees. If over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Certification, the Debtors shall apply the votes to accept and to reject the Proposed Plan in the same proportion as the votes to accept and to reject the Proposed Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position in Class 3 (First Lien Notes Claims), Class 4 (Second Lien Notes Claims), Class 5 (HoldCo Unsecured Notes Claims), and Class 6 (Intermediate HoldCo Unsecured Notes Claims);

(e)    for purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the principal amount of its Notes Claims, although any principal amounts may be adjusted by Epiq to reflect the amount of the Claim actually voted, including prepetition interest;

(f)    a single Nominee may complete and deliver to Epiq multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot. Likewise, if a Beneficial Holder submits more than one vote to its Nominee whether via Beneficial Ballot or other acceptable voting method; (i) the latest received vote before the submission deadline imposed by the Nominee shall be deemed to supersede any prior Beneficial Ballot submitted by the Beneficial Holder; and (ii) the Nominee shall complete the Master Ballot accordingly; and

(g)    the Debtors will, upon written request, reimburse Nominees for customary mailing and handling expenses incurred by them in forwarding the Solicitation Package and Beneficial Ballot to the Beneficial Holders for which they are the Nominee. No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting votes from Beneficial Holders with respect to the Proposed Plan.

17

31.     To assist in the solicitation process, Epiq may contact parties that submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies; *provided*, *however*, that Epiq is not obligated to do so.

### *The Confirmation Hearing*

32.     The Confirmation Hearing shall be held on **March 25, 2019 at 9:30 a.m. (prevailing Eastern Time)**; *provided*, *however*, that the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice, including adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

### *Plan Supplement*

33.     The Debtors are authorized to file and serve a supplement to the Proposed Plan on or before **February 19, 2019**, and to further supplement such plan supplement as necessary thereafter.

34.     The deadline to object or respond to confirmation of the Proposed Plan shall be **March 8, 2019 at 4:00 p.m. (prevailing Eastern Time)**.

35.     Objections and responses, if any, to confirmation of the Proposed Plan, must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) set forth the basis for the objection and the specific grounds therefor, and provide proposed language, if any, that, if accepted and incorporated by the Debtors, would obviate such objection; and (v) be filed, together with proof of service.

36.     Registered users of this Court's case filing system must electronically file their objections and responses.  All other parties in interest must file their objections and

responses in writing with the United States Bankruptcy Court Clerk's Office, 824 Market Street,

3rd Floor, Wilmington, Delaware 19801.

      37.    Pursuant to Bankruptcy Rule 3017, any objection or response also must be

served upon and received by the following parties:

***Debtors***
LBI Media, Inc., *et al.*
1845 West Empire Avenue
Burbank, California 91504
Attn:  Kim Zeldin, Esq.

***Office of the U.S. Trustee***
Office of the U.S. Trustee for
the District of Delaware
844 King Street
Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn: David L. Buchbinder, Esq.

***Counsel to the Debtors***
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:  Ray C. Schrock, P.C.
      Garrett A. Fail, Esq.
Email:  ray.schrock@weil.com
      garrett.fail@weil.com

***Co-Counsel to the Debtors***
Richards, Layton, & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn: Daniel J. DeFranceschi, Esq.
      Zachary I. Shapiro, Esq.
Email: defranceschi@rlf.com
      shapiro@rlf.com

***Counsel to the Official Committee of***
***Unsecured Creditors***
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Attn: Norman N. Kinel, Esq.
      Nava Hazan, Esq.
Email: norman.kinel@squirepb.com
      nava.hazan@squirepb.com

***Co-Counsel to the Official Committee***
***of Unsecured Creditors***
Bayard, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Attn: Scott D. Cousins, Esq.
      Justin R. Alberto, Esq.
Email: scousins@bayardlaw.com
      jalberto@bayardlaw.com

RLF1 20661097V.1

| | |
|---|---|
| ***Counsel to the First Lien Trustee*** | ***Counsel to the DIP Agent, DIP Lenders, and Consenting First Lien Noteholders*** |
| Morrison & Foerster LLP | Paul, Weiss, Rifkind, Wharton & |
| 250 West 55th Street | Garrison LLP |
| New York, NY 10019 | 1285 Avenue of the Americas |
| Attn:  Jonathan I. Levine, Esq. | New York, NY 10019 |
| Email:  jonlevine@mofo.com | Attn:  Paul M. Basta, Esq. |
| | Jeffrey D. Saferstein, Esq. |
| Ashby & Geddes, P.A. | Sarah Harnett, Esq. |
| 500 Delaware Avenue, 8th floor | Email:  pbasta@paulweiss.com |
| Wilmington, DE 19801 | jsaferstein@paulweiss.com |
| Attn:  William P. Bowden, Esq. | sharnett@paulweiss.com |
| Email:  wbowden@ashbygeddes.com | |

| | |
|---|---|
| ***Counsel to Credit Suisse AG, Collateral Trustee for the First Lien Notes*** | ***Counsel to U.S. Bank National Association, Indenture Trustee for Second Lien Notes*** |
| Locke Lord LLP | Maslon LLP, |
| 3300 Wells Fargo Center | 3300 Wells Fargo Center |
| 90 South Seventh Street | 90 South Seventh Street |
| Minneapolis, MN 55402 | Minneapolis, MN 55402 |
| Attn:  Juliane M. Dziobak, Esq. | Attn:  Brian J. Klein, Esq. |
| Email:  julie.dziobak@lockelord.com | Email:  brian.klein@maslon.com |

| | |
|---|---|
| ***Counsel to the Second Lien Noteholders*** | ***Counsel to the HoldCo Noteholders*** |
| Willkie Farr & Gallagher LLP | Landis Rath & Cobb LLP |
| 787 Seventh Avenue | 919 Market Street, Suite 1800 |
| New York, NY 10019 | P.O. Box 2087 |
| Attn: Rachel Strickland, Esq. | Wilmington, DE 19899 |
| Email: rstrickland@willkie.com | Attn:  Matthew B. McGuire, Esq. |
| | Email:  mcguire@lrclaw.com |

| | |
|---|---|
| ***Trustee for the Intermediate HoldCo Notes*** | ***Trustee for the HoldCo Noteholders*** |
| TMI Trust Company | U.S. Bank National Association |
| 1100 Abernathy Road NE | 1420 Fifth Avenue, 7th Floor |
| Suite 480, Atlanta, GA 30328 | Seattle, Washington 98101 |
| Attn:  Kathy Knapp | Attn: Corporate Trust Services |

no later than the Plan Objection Deadline.  Pursuant to Bankruptcy Rule 3020(b), if no objection

is timely filed, this Court may determine that the Proposed Plan has been proposed in good faith

and not by any means forbidden by law without receiving evidence on such issues.

38.      Objections to confirmation of the Proposed Plan that are not timely filed, served and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

39.      The Debtors are authorized to file and serve replies or an omnibus reply to any such objections along with their brief in support of confirmation of the Proposed Plan either separately or by a single, consolidated reply, the Voting Certification and any affidavits or declarations in support of confirmation of the Proposed Plan on or before **March 20, 2019** or as otherwise ordered by the Court (the "**Reply Deadline**").  In addition, any party in interest may file and serve a statement in support of confirmation of the Proposed Plan and/or a reply to any objections to confirmation of the Proposed Plan by the Reply Deadline.

### Confirmation Hearing Notice

40.      The Confirmation Hearing Notice substantially in the form attached hereto as **Exhibit 1** is **APPROVED**, and provides due, proper, and adequate notice, comports with due process and complies with Bankruptcy Rules 2002 and 3017 and Local Rule 9006-1.

41.      The Debtors shall publish the Publication Notice on or prior to **February 4, 2019** in the national edition of *The Wall Street Journal* and *The Los Angeles Times* and shall be authorized (but not required) to publish the Publication Notice in such trade or other local publications of general circulation as the Debtors shall determine.

**General**

42.      The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Proposed Plan, the Ballots, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Proposed Plan, and any other materials in the Solicitation Packages prior to mailing.

21

43.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

44.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**Dated: January 22nd, 2019**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**