# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LBI Media, Inc., et al.,[1]<br><br>　　　　　　Debtors. | Case No. 18-12655-CSS<br><br>CHAPTER 11<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 45, 278 |

**OBJECTION OF SECOND LIEN NOTES TRUSTEE TO DEBTOR'S MOTION PURSUANT TO U.S.C. §§ 362 AND 105 TO ENFORCE THE AUTOMATIC STAY**

U.S. Bank National Association, in its respective capacities as indenture trustee (the "**Second Lien Notes Trustee**") for the holders of (a) those certain 11½%/13½% PIK Toggle Second Priority Secured Subordinated Notes due 2020 issued by LBI Media, Inc. and guaranteed by certain subsidiary guarantors (the "**Series I Second Lien Notes**") under that certain Indenture dated as of December 31, 2012, as amended or supplemented; (b) those certain 11½%/13½% PIK Toggle Second Priority Secured Subordinated Notes due 2020, Series II issued by LBI Media, Inc. and guaranteed by certain subsidiary guarantors (the "**Series II Second Lien Notes**" and together with the Series I Second Lien Notes the "**Second Lien Notes**") under that certain Indenture dated as of December 23, 2014, as amended or supplemented, by its undersigned attorneys, hereby submits this Objection (the "**Objection**") to the Debtors' Motion Pursuant to 11 U.S.C. §§ 362

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number, as applicable, are: LBI Media, Inc. (8901); Liberman Broadcasting, Inc. (8078); LBI Media Holdings, Inc. (4918); LBI Media Intermediate Holdings, Inc. (9635); Empire Burbank Studios LLC (4443); Liberman Broadcasting of California LLC (1156); LBI Radio License LLC (8905); Liberman Broadcasting of Houston LLC (6005); Liberman Broadcasting of Houston License LLC (6277); Liberman Television of Houston LLC (2887); KZJL License LLC (2880); Liberman Television LLC (8919); KRCA Television LLC (4579); KRCA License LLC (8917); Liberman Television of Dallas LLC (6163); Liberman Television of Dallas License LLC (1566); Liberman Broadcasting of Dallas LLC (6468); and Liberman Broadcasting of Dallas License LLC (6537). The Debtors' mailing address is 1845 West Empire Avenue, Burbank, California 91504.

and 105 to Enforce the Automatic Stay (Docket No. 412) (the "**Motion**") upon the grounds set forth herein below, and represents as follows:

## INTRODUCTION

1.  The Motion is a deeply misconceived effort to apply the automatic bankruptcy stay, contrary to its intended function of centralizing disputes in the bankruptcy court, as a means to limit creditor participation in the Debtors' own bankruptcy cases. Once the stay is recognized as having no application, the Motion is a procedurally improper effort to obtain injunctive relief based upon a contract under which the Debtors do not have the right to specific performance and do not even own the rights they claim. Debtors fail to cite a single case adopting their automatic stay enforcement approach to the determination of standing/waiver issues based upon an intercreditor agreement.

2.  The Debtors try to posture the Motion as an extraordinary measure needed to prevent alleged efforts by the Second Lien Notes Trustee and the Ad Hoc Group of Second Lien Noteholders to wreak chaos on these bankruptcy cases even though a confirmation hearing is scheduled and there has yet to be a single contested hearing. The allegations of Intercreditor Agreement breaches leveled at the Second Lien Notes Trustee are almost entirely misdirected accusations aimed at the Ad Hoc Group of Second Lien Noteholders, and are otherwise incorrect.[2] Moreover, the injunctive relief sought in the Motion is procedurally improper, vague and overbroad in its preemptive effort to disadvantage creditors before the nature of their conduct and the Debtors' conduct is known. In apparent recognition of the Motions' weakness as proposed, the Debtors invite the Court, in the alternative, to schedule a hearing on a motion *in limine* prior to the confirmation hearing. Rather than impose a case-wide preemptive restraint upon second

---

[2] The Ad Hoc Group of Second Lien Noteholders who hold approximately 94% of the Series II Second Lien Notes vigorously deny that they have violated the Intercreditor Agreement in a separate response.

lien creditor rights and the Court's own process, the Court should entertain these disputes at the appropriate time when they are ripe in connection with the proceedings in which they arise.

I. **The Automatic Stay Has no Role to Play in the Resolution of These Intercreditor Disputes.**

   A. **The Debtors have no rights under New York or bankruptcy law to invoke the automatic stay under the Intercreditor Agreement.**

3.  The Debtors' invocation of the automatic stay in the Motion as a means to specific performance of the Intercreditor Agreement fails in the first instance because the automatic stay does not apply to prohibit creditors from participating in the Debtor's own bankruptcy cases. *See, e.g., Zotow v. Johnson (In re Zotow),* 432 B.R. 252, 261 (9th Cir. B.A.P. 2010) (explaining that the automatic stay "serves to control creditor action by encouraging creditors to participate in the bankruptcy process to resolve their claims"). The purpose of the automatic stay is, among other things to centralize the administration of the debtor's affairs before the bankruptcy court, not to control what arguments can be made and which cannot be made to the bankruptcy judge presiding over it. *Holtkamp v. Littlefield (In re Holtkamp),* 669 F.2d 505, 508 (7th Cir. 1982) (noting the "purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors"); *Morgan Guar. Trust Co. of N.Y. v. Am. Sav. and Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986) (stating that the automatic stay "seeks to ensure orderly administration of the debtor's estate to protect the creditors' right to equality of distribution"); *United States v. Sayres*, 43 B.R. 437, 439 (W.D.N.Y. 1984) (noting the automatic stay's "intended effect is to preserve the status quo as of the date of commencement of the bankruptcy proceedings"). *See also In re J.T. Moran Fin. Corp.,* 124 B.R. 931, 940 (S.D.N.Y. 1991) (finding "the automatic stay does not apply to actions against the debtor brought in the bankruptcy court where the debtor's case is pending").

3

4. As a hook to draw in the automatic stay protections, the Debtors claim to hold important property interests under the Intercreditor Agreement that are being interfered with by the Ad Hoc Group of Second Lien Noteholders and the Second Lien Notes Trustee. While contractual interests can constitute property interests of a bankruptcy estate in certain circumstances under 11 U.S.C. § 541, the Debtors do not hold any interests under the Intercreditor Agreement rising to the level of being a property interest belonging to them.

5. Under New York law, the rights created by contract are a function of the intention of the parties to that contract. *See, e.g., British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003) (stating "[u]nder New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed"); *Laba v. Carey*, 277 N.E.2d 641, 644-45 (N.Y. 1971) (recognizing the court's "concern is with the intent of the parties 'to the extent that they evidenced what they intended by what they wrote' and that intent must be gleaned from the several provisions of the contract") (citations omitted). The Intercreditor Agreement here must be viewed in the context of its overall purpose, which is to assure and protect the priority rights of senior secured creditors in common collateral. *In re Bank of New England Corp.*, 364 F.3d 355, 361 (1st Cir. 2004) (stating "[s]ubordination agreements are essentially inter-creditor arrangements"). The intent of an intercreditor agreement is to protect the rights of senior secured parties and prohibit junior secured parties from interfering with the stipulated rights of senior secured parties – not to confer forbearance rights upon the debtor. *See Ion Media Networks, Inc.*, 419 B.R. 585, 593-94 (Bankr. S.D.N.Y. 2009) (recognizing that the parties to the intercreditor agreement "intended . . . to prevent interference with the stipulated senior rights of the First Lien Lenders").

6. The provisions of the Intercreditor Agreement identified in the Motion as property of the estate are mere intercreditor promises for the benefit of the First Priority Lien Secured Parties

4

and secondarily for the benefit of the Subordinated Lien Secured Parties. The Debtors are parties to the Intercreditor Agreement, not to receive bargained for rights and benefits as they claim, but because of their contractual undertakings to protect the senior lien parties' interests in the context of the intercreditor agreements. For example in Section 4.3 of the Intercreditor Agreement, the Debtors agree not to pay the proceeds of "Common Collateral" to the subordinated lien parties under certain circumstances. Similarly, in Section 5.6(f), the Debtors promise to transfer certain released Common Collateral as directed by the senior lien parties.

7.    Under basic contract principles, being a party to multilateral contract does not necessarily confer on every party the right to enforce all contractual provisions against all other parties to the agreement. *See, e.g., Tobin v. Gluck*, 137 F.Supp. 278, 307 (E.D.N.Y. 2015) (noting "[w]here a contract among multiple parties specifically assigns certain obligations to particular parties and expressly makes only those parties responsible for nonperformance, breach of contract claims pursuant to such provisions may only be asserted against the particular party to whom the obligation was assigned"); *Klauber Bros. v. Russell–Newman, Inc.,* No. 11–CV–4985, 2013 WL 1245456, at *3 (S.D.N.Y. Mar. 26, 2013) (finding settlement agreement "clearly impose[d] different obligations" on parties by providing that only one was responsible for making certain settlement payments); *Pavon v. 19th St. Assocs. LLC*, No. 112027/02, 2007 WL 3314014, at *4–5, 11 (N.Y. Sup. Ct. Nov. 8, 2007) (dismissing claims for breach of provision in commercial lease requiring corporate lessee to procure insurance where claims were asserted against an individual and corporate entity other than lessee because "[t]he promise to procure insurance . . . was made only by . . . the lessee"). *See also* Restatement (Second) of Contracts § 288(1) ("Where two or more parties to a contract make a promise or promises to the same promisee, the manifested intention of the parties determines whether they promise that the same performance or separate performances shall be given").

**B. The Intercreditor Agreement itself confers no enforcement rights upon the Debtors.**

8. A closer examination of the Intercreditor Agreement clearly demonstrates that it was not intended to create a meaningful set of rights in the Debtors. Importantly, Section 8.12 gives the sole right of specific performance to the First Priority Lien Trustee. The Debtor, or the "Company" as used therein, is not given the right to specific performance because it is not the recipient of rights against the subordinate lien creditors in the first instance. It is an obligor under the Intercreditor Agreement who agreed to grant certain protections to the other parties, not the holder of property rights.

9. Further reflecting this intention is Section 8.3 which gives broad powers of waiver, and amendment to the first priority secured creditors and not to the Company. It provides that the Company and the other Debtors or "Grantors" of liens shall not have any right to consent to or approve any amendment, modification of waiver of any provision of the Intercreditor Agreement except to the extent their rights are affected, and no rights are mentioned. Again, this restriction was included because the property rights conferred by the Intercreditor Agreement are not conferred upon the Company or the other Grantors and thus neither the Company nor the Grantors are entitled to waive, modify or amend those rights.

10. Further evidence of a lack of Debtor property rights is revealed by Section 8.21, providing that the First Priority Lien Holders, and not the Company, is entitled to the recovery of attorneys' fees in the event the Subordinated Lien Secured Party "acts in any fashion that is prohibited by or otherwise inconsistent with any provision of" the Intercreditor Agreement. Again, the Company is excluded as a party entitled to attorneys' fees for enforcement action because the Company has no "property rights" under the Intercreditor Agreement to enforce.

11. Section 7.3 of the Intercreditor Agreement captioned "Obligations Unconditional" addresses circumstances that will not affect the continuing force of the respective contractual

6

rights, interests and obligations of the senior and junior lien parties under the Intercreditor Agreement, and again the Company is omitted altogether because the Company has no relevant rights and interests under the Agreement. Instead, the Intercreditor Agreement makes it clear that all "rights, interests, agreements and obligations" of the senior and junior lien parties (and not the Company or the other Grantors of liens) "hereunder shall remain in full force and effect irrespective of" the occurrence of specified events.

12.     The Debtors' Motion relies completely upon their status as parties to the Intercreditor Agreement to claim incorrectly the rights conferred by the secured creditors upon each other.[3] This claim is dramatically inconsistent with the customary intention of lien subordination agreements to leave unchanged the relationship of the debtor to both senior and junior secured creditors, except for debtor promises needed to give effect to the intercreditor relationship such as payment and collateral transfer limitations intended to give effect to the subordination provisions. It simply is not reasonable to construe the intercreditor undertakings of the secured creditors as being property rights of the Debtors.

### C. Limitations the Intercreditor Agreement imposes upon the Trustee do not benefit the Debtors.

13.     The specific Intercreditor Agreement provisions laid out in the Motion provide no support for Debtors' claim to owning property or enforcement rights. *See* Motion, at ¶ 25. For example, the Motion first refers to the prohibition of Section 6.2 against the junior secured parties seeking relief from the automatic stay in the Company's bankruptcy case. That provision is expressly waivable by the First Priority Lien Trustee and the holders of a majority of the First Priority Claims without regard to the Company's ability to enforce the automatic stay in its

---

[3] Debtors' reliance upon Section 8.16 captioned *No Third Party Beneficiaries; Successors and Assigns* is misplaced. That section is a miscellaneous provision primarily intended to exclude nonparties from having rights, not to confer intercreditor creditor rights upon the Debtors.

7

bankruptcy. *See* Intercreditor Agreement, at § 6.2 (providing that the junior lien parties can seek stay relief with the "prior written consent" of the First Priority Lien Collateral Trustee). This is not a promise that the junior lien parties made to the Company or that is enforceable by the Company as a benefit or property interest conferred upon it under the Intercreditor Agreement.

14. Next the Motion refers to provisions limiting the right of junior lien parties to object to or contest the liens and claims of senior lien parties. *See* Intercreditor Agreement, at §§ 6.7(a) and 2.2(a); Motion, at ¶ 25(b) and (c). These rights are by their nature contractual rights of the senior lien parties and not a "right" of or benefit conferred upon the Company.

15. Similarly, each of the cited limitations upon junior lien creditor rights to raise various objections in the Debtors' insolvency proceedings including for the use of cash collateral, DIP loan objections and restructuring plans exclusively protect circumstances in which the senior lien party decides to take an action, not the Company. *See* Intercreditor Agreement, at §§ 6.1(a), 6.3(a) and 3.1(b); Motion, at ¶ 25(d) and (e). There is simply no property right conferred upon the Company under any of these provisions.

16. The intercreditor standing cases cited by the Debtors in the Motion are distinguishable. None of them employ the automatic stay to enforce intercreditor or lien subordination agreements preserved under Section 510 of the Bankruptcy Code. Rather they involve standing or waiver objections targeted at specific actions prohibited by the relevant agreements. *See Ion Media Networks, Inc.*, 419 B.R. at 595 (overruling junior lien parties' confirmation objection for lack of standing, but noting "the recognized public policy of liberally permitting parties to appear and be heard in Bankruptcy Court" and the junior lien parties' rights to be heard as unsecured creditors).

**D. The Indenture specifically preserves noteholders' rights to enforce the Debtors' obligations.**

17. The Indenture itself supports a reading of the Intercreditor Agreement as narrowly fixing property rights in common collateral only as between secured creditors, not the Company. Article 13 provides for the subordination of the indebtedness evidenced by the Second Lien Notes to qualified Senior Debt. Section 13.08 entitled "Relative Rights" provides:

> This Article 13 defines the relative rights of Holders of Notes and holders of Senior Debt. Nothing in this Indenture will:
>
> (i) impair, as between the Company and Holders of Notes, the obligation of the Company, which is absolute and unconditional, to pay principal of and interest on the Notes in accordance with their terms;
>
> (ii) affect the relative rights of Holders of Notes and creditors of the Company other than their rights in relation to holders of Senior Debt; or
>
> (iii) prevent the Trustee or any Holder of Notes from exercising its available remedies upon a Default or Event of Default, subject to the rights of holders and owners of Senior Debt to receive distributions and payments otherwise payable to Holders of Notes.
>
> If the Company fails because of this Article 13 to pay principal of or interest on a Note on the due date, the failure is still a Default or Event of Default

*See* Second Lien Notes Indenture, at § 13.08.

18. Similarly, Section 10.03 of the Second Lien Notes Indenture also included in a section captioned "Relative Rights" provides:

> Nothing in this Indenture, and Note or Security Document will: . . . (b) (i) impair as between the Company and the Holders of the Notes or holder of Parity Lien Obligations , the obligation of the Company to pay principal of, or premium or interest, if any, on the Notes in accordance with their terms **or any other obligation of the Company or any other Obligor under this Indenture, and Note or Security Document**.

*See* Second Lien Notes Indenture, at § 10.03(b)(i) (emphasis added).

19. For these reasons the Motion fails because the automatic stay is simply not applicable, and the Debtors were not bestowed with any enforceable property interests simply by undertaking certain obligations to the senior lien parties in the Intercreditor Agreement.

## II. The Debtors' Motion Is Procedurally Improper.

20. The Motion seeks broad injunctive relief against the Second Lien Notes Trustee and the Ad Hoc Group of Second Lien Noteholders in seeking to limit the types of confirmation objections and other pleadings that can be filed in the future, the types of discovery that can be sought, and the types of evidence that can be presented to the Court. The proposed relief is inappropriate as an enforcement of the automatic stay because the automatic stay is inapplicable for the reasons set forth above. It is procedurally inappropriate as a motion for specific performance of the Intercreditor Agreement both because the Debtors have no right of specific performance under its terms (see Section 8.12) and because any such injunctive or equitable relief must be brought by adversary proceeding under Bankruptcy Rule 7001(7). *In re Feldman*, 309 B.R. 422, 428 (Bankr. E.D.N.Y. 2004) (recognizing that Fed. R. Bank. P. 7001(7) requires the commencement of an adversary proceeding to obtain injunctive or other equitable relief against a party); *In re Bishop*, 578 B.R. 158, 162 (Bankr. W.D.N.Y. 2017) (recognizing that injunctive or declaratory relief "must be sought by adversary proceeding").

## III. The Injunctive Relief Sought Is Vague and Overbroad.

21. The broad injunctive relief requested in the Motion goes beyond any possible construction of any parties' rights under the Intercreditor Agreement. For example, the Intercreditor Agreement does not prevent the Second Lien Notes Trustee or the Ad Hoc Group of Second Lien Noteholders from suing Mr. Liberman, yet the Debtors ask this Court to prohibit it to the extent the Plan purports to release him. It likewise would prevent the discovery of fraud, bad faith or misconduct by Mr. Liberman or the Debtors and the introduction of evidence of such fraud.

10

The Debtors cannot argue that they secured the right to confirm a plan of reorganization in bad faith or contrary to the Bankruptcy Code simply by joining in the Intercreditor Agreement. Such a radical reading of the Intercreditor Agreement would make it violative of public policy. *In re NWFX, Inc.*, 881 F.2d 530, 538 (8th Cir. 1989) (recognizing contract "would be void as against public policy if it were interpreted" in a manner inconsistent with such policy); *In re TR Acquisition Corp.*, 309 B.R. 830, 837 (S.D.N.Y. 2003) (noting "parties have the right to agree" to a liquidated damages clause "provided that the clause is neither unconscionable nor contrary to public policy") (citations omitted); *In re Winstar Comm'n Inc.*, 378 B.R. 756, 760 (Bankr. D. Del. 2007) (recognizing that certain fee sharing agreements that "undermine the integrity of the bankruptcy proceeding" were unenforceable as violative of the Bankruptcy Code). Moreover, the vagueness of the proposed overbroad order will do nothing more than lead to additional disputes about its meaning laced with additional accusations of contempt of court.

22.     Again, the sensible course of action is for the Court to consider whatever standing or waiver arguments the Debtors and HPS wish to make by reason of the Intercreditor Agreement after confirmation objections are filed or in the adversary proceedings where the alleged violations are occurring. If particular objections to confirmation run afoul of the very limited actions prohibited by the Intercreditor Agreement, they can be addressed at the time. This would permit the Court to consider the issues in the context of a ripe dispute.

**IV.     The Allegations of Intercreditor Agreement Violations are Incorrect.**

23.     The Second Lien Notes Trustee has neither violated the Intercreditor Agreement nor indicated any intention to do so in the future.[4] For the record, the Second Lien Notes Trustee did not object to the DIP Motion as alleged in the Motion, which is the only concrete allegation

---

[4] The Ad Hoc Group of Second Lien Noteholders will respond separately to the breach allegations made against them.

11

directed specifically at the Second Lien Notes Trustee. *See* Docket No. 196 (Certification of Debtors' Counsel describing objections filed to DIP Motion). Nor is it a party to the litigation referenced in the Motion. Nevertheless, the Motion repeatedly insinuates that the Second Lien Notes Trustee is doing whatever the Ad Hoc Group of Second Lien Noteholders is doing, apparently because Debtors want the same injunctive relief against both. The Motion lacks merit for several reasons and should be denied.

## CONCLUSION

For the reasons set forth herein the Motion should be denied in its entirety.

Dated: February 13, 2019

**DORSEY & WHITNEY (DELAWARE) LLP**

By: /s/ *Alessandra Glorioso*
Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue
Suite 1010
Wilmington, DE 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: schnabel.eric@dorsey.com
　　　　glorioso.alessandra@dorsey.com

AND

**MASLON LLP**

Clark T. Whitmore (admitted *pro hac vice*)
Amy Swedberg (admitted *pro hac vice*)
Ana Chilingarishvili (admitted *pro hac vice*)
90 South Seventh Street, Suite 3300
Minneapolis, MN 55402
Telephone: 612-672-8200
Facsimile: 612-672-8397
E-Mail: clark.whitmore@maslon.com
　　　　amy.swedberg@maslon.com
　　　　ana.chilingarishvili@maslon.com

**ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION, IN ITS CAPACITIES AS INDENTURE TRUSTEE**

**CERTIFICATE OF SERVICE**

       I hereby certify that on the date hereof, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF System and served on all parties who have electronically entered a notice of appearance, through the notice of filing generated by the Court's CM/ECF System and served on the following parties via the methods indicated:

| | |
|---|---|
| Daniel J. DeFranceschi, Esq.<br>Zachary I. Shapiro, Esq.<br>Brendan J. Schlauch, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>*Hand Delivery* | LBI Media, Inc.<br>Attn:  Kim Zeldin, Esq.<br>1845 West Empire Avenue<br>Burbank, California 91504<br>*FedEx* |
| Pauline K. Morgan, Esq.<br>M. Blake Cleary, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>*Hand Delivery* | Ray C. Schrock, P.C., Esq.<br>Garrett A. Fail, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>*FedEx* |
| David L. Buchbinder, Esq.<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE 19801<br>*Hand Delivery* | Paul M. Basta, Esq.<br>Jeffrey D. Saferstein, Esq.<br>Sarah Harnett, Esq.<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>*FedEx* |
| William P. Bowden, Esq.<br>Ashby & Geddes, P.A.<br>500 Delaware Avenue, 8th Floor, Wilmington DE, 19801<br>*Hand Delivery* | Jonathan I. Levine, Esq.<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, NY 10019<br>*FedEx* |
| Matthew B. McGuire, Esq.<br>Landis Rath & Cobb LLP<br>919 Market Street, Suite 1800<br>P.O. Box 2087<br>Wilmington, DE 19899<br>*Hand Delivery* | Rachel Strickland, Esq.<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>*FedEx* |

<div style="margin-left:auto">

Juliane M. Dziobak, Esq.
Locke Lord LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
*FedEx*

Kathy Knapp
TMI Trust Company
1100 Abernathy Road NE
Suite 480
Atlanta, GA 30328
*FedEx*

</div>

Dated:  February 13, 2019

By: /s/ *Alessandra Glorioso*
Alessandra Glorioso (DE Bar No. 5757)
Dorsey & Whitney (Delaware) (LLP)
300 Delaware Avenue
Suite 1010
Wilmington, DE  19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: glorioso.alessandra@dorsey.com

**ATTORNEY FOR U.S. BANK NATIONAL ASSOCIATION, IN ITS CAPACITIES AS INDENTURE TRUSTEE**