**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

------------------------------------------------------------ x
*In re:*                                                    :
                                                            :   Chapter 11
                                                            :
**LBI MEDIA, INC.,** *et al.*                               :   Case No. 18– 12655 (CSS)
                                                            :
Debtors.[1]                                                 :   (Jointly Administered)
                                                            :
------------------------------------------------------------ x   Hearing Date: 3/25/19 @ 9:30 a.m.
                                                                Objection Deadline: 3/14/19 @ 4:00 p.m.

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF LBI MEDIA, INC., AND ITS AFFILIATED DEBTORS**

Andrew R. Vara, the Acting United States Trustee for Region 3 ("U.S. Trustee"), through his undersigned attorneys, objects to confirmation of Modified Second Amended Joint Chapter 11 Plan of Reorganization of LBI Media, Inc., and Its Affiliated Debtors ("Plan", D.E. 621)[2] and states as follows:

**JURISDICTION**

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: LBI Media, Inc. (8901); Liberman Broadcasting, Inc. (8078); LBI Media Holdings, Inc. (4918); LBI Media Intermediate Holdings, Inc. (9635); Empire Burbank Studios LLC (4443); Liberman Broadcasting of California LLC (1156); LBI Radio License LLC (8905); Liberman Broadcasting of Houston LLC (6005); Liberman Broadcasting of Houston License LLC (6277); Liberman Television of Houston LLC (2887); KZJL License LLC (2880); Liberman Television LLC (8919); KRCA Television LLC (4579); KRCA License LLC (8917); Liberman Television of Dallas LLC (6163); Liberman Television of Dallas License LLC (1566); Liberman Broadcasting of Dallas LLC (6468); and Liberman Broadcasting of Dallas License LLC (6537). The Debtors' mailing address is 1845 West Empire Avenue, Burbank, California 91504.

[2] Terms shall have the same meaning given them in the Plan, Disclosure Statement or Solicitation Procedures Motion unless otherwise noted herein.

1

overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

4. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Plan and the issues raised in this objection.

## PRELIMINARY STATEMENT

5. The Plan contemplates a restructuring of the Debtors' First Lien Notes Claims of $233 million into 95% of New Equity Interests if the Second Lien Notes vote to accept the Plan, or 100% of New Equity Interests if the Second Lien Notes vote to reject the Plan.[3]  The Plan proposes to pay administrative, priority and DIP claims in full.  All remaining junior classes of unsecured claims will receive little or no dividend with the exception of Intercompany Claims, which are unimpaired under the Plan.

6. The U.S. Trustee objects to confirmation of the Plan for a variety of reasons, including but not limited to:

---

[3] The Plan also provides for a potential sale of substantially all assets of the Debtor ("Alternative Transaction"), and further provides an opportunity for the Second Lien Notes in the approximate amount of $262 million to cash out the First Lien Notes by mid-January, 2019 (a date prior to the proposed Confirmation Hearing).  If the Second Lien Notes exercise this opportunity, 100% of New Equity Interests would be distributed to holders of the Second Lien Notes.  As of February 21, 2019, the Debtors announced that there is no Alternative Transaction and the Second Lien Notes did not exercise their opportunity to take out the First Lien Notes.

    a. The Plan violates the Absolute Priority Rule;

    b. The Plan seeks to improperly utilize FRBP 9019 to discharge claims

    c. The Plan contains broad release and exculpation provisions that are inconsistent with the Bankruptcy Code;

    d. The Restructuring Support Agreement should be included with the Plan.

## STATEMENT OF FACTS

7. On November 21, 2018, the Debtors filed their petitions. All of the cases have been ordered jointly consolidated for administrative purposes. On December 6, 2018, the U.S. Trustee appointed an Official Committee of Unsecured Creditors.

8. On November 23, 2018, the Debtors filed their original Plan (D.E. 43), the Disclosure Statement (D.E. 44), and the Solicitation Procedures Motion (D.E. 45). On March 8, 2019, the Debtors filed the Modified Second Amended Joint Chapter 11 Plan of Reorganization of LBI Media, Inc., and Its Affiliated Debtors ("Plan", D.E. 621, and redline D.E. 622).

9. Plan Section I.E. makes reference to a Restructuring Support Agreement, and provides that the Restructuring Support Agreement is incorporated into the Plan by reference. The Debtors have not sought Court approval of the Restructuring Support Agreement. The Debtors did include the Restructuring Support Agreement as Exhibit B to the Plan in the March 8, 2019 filing.

10. Article X of the Plan proposes broad based release and exculpation provisions. The definition of Releasing Parties (I.A.1.143) provides for the ability of Claim holders to opt out of proposed release provisions although there appear to be different procedures for different claimants.

11. Plan Section 5.2, entitled Compromise and Settlement of Claims, Interests and Controversies, reads in full as follows:

"(a) Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest, including with respect to the HoldCo Unsecured Notes Claims, Intermediate HoldCo Unsecured Notes Claims, ASCAP/BMI Settlement Claims, Ongoing Trade Claims, and General Unsecured Claims.

(b) The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities."

12. The Definition of Exculpated Parties (1.65) reads as follows:

***Exculpated Parties*** *means, collectively, and in each case, solely in their capacities as such: (a) the Debtors, (b) the Reorganized Debtors, (c) the Debtors' and Reorganized Debtors current and former directors and officers, attorneys, accountants, financial advisors, investment bankers, consultants, representatives, and other professionals, that worked for or with the Debtors on or after the Petition Date, (d) the Creditors' Committee, each of its members, attorneys, financial advisors, and other professionals, and* (e) *the Section 1125(e) Parties, provided that any exculpations afforded under the Plan or the Confirmation Order or to the Section 1125(e) Parties shall be granted only to the extent provided for pursuant to section 1125(e) of the Bankruptcy Code.*[4]

13. The Plan originally filed did not contain a definition entitled "Section 1125(e) Parties". This definition was added to the Plan later. This definition (1.157) reads in full:

---

[4] The italicized language was not included in the Plan filed in November 2018 (D.E. 43).

4

*Section 1125(e) Parties* means each of the following, solely in their respective capacities as such:  (a) the Consenting First Lien Noteholders, (b) the DIP Agent, (c) the DIP Lenders, (d) the First Lien Notes Trustee, (e) the First Lien Collateral Trustee, (f) the Exit Facility Agent, (g) the Exit Facility Lenders, (h) any other holders of Notes Claims that become party to the Restructuring Support Agreement, and (i) with respect to each of the foregoing entities in clauses (a) through (h), such Entity's Related Parties.[5]

14. The Definition of Released Parties (1.142) reads as follows:

*Released Parties* means, collectively, and in each case, solely in their capacities as such: (a) the Debtors, (b) the Reorganized Debtors, (c) the Consenting First Lien Noteholders, (d) the DIP Agent, (e) the DIP Lenders, (f) the First Lien Notes Trustee, (g) First Lien Collateral Trustee, (h) the Exit Facility Agent, (i) the Exit Facility Lenders, (j) any other holders of Notes Claims that subsequently become party to the Restructuring Support Agreement, (k) holders of Notes Claims in an Accepting Class that vote to accept the Plan, and (l) with respect to each of the foregoing entities in clauses (a) through (k), all Related Parties. For the avoidance of doubt, the Debtors' current and former directors, officers, employees, and shareholders shall each be a Released Party under the Plan.

## ARGUMENT

**I.    Releases**

    **A.    Third Party Releases**

15. There are numerous ways in which the third party releases, the Debtor releases and exculpation provisions set forth in the Plan are contrary to the standards set forth by this Court in *In re Tribune Company*, 464 B.R. 126 (Bankr. D. Del. 2011), *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), and other applicable law.  Certain opt out mechanisms must also be clarified or amended before the voting solicitation process begins.

16. Some Courts in this District have determined that third party releases of non-debtors should be allowed provided that they are consensual. *See In re Wash. Mut., Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011), *citing, inter alia, In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power

---

[5] The Definition of Related Parties (1.141) contains a list of potential individuals and entities not one of which has been identified.

to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (holding that the release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan).

17.  There are certain categories of persons and entities included among the Released Parties, such as the Debtors' directors, officers and employees, and similar members of the Debtors or other parties that the Third Circuit Court of Appeals and this Court have already determined are not entitled to non-consensual third party releases. *See Continental Airlines*, 203 F.3d at 215 ("[W]e have found no evidence that the non-debtor D & Os provided a critical financial contribution to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability"); *Washington Mutual*, 442 B.R. 314 at 354 ("[T]here is no basis for granting third party releases of the Debtors' officers and directors , . . . . [as] [t]he only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan, [which] activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation and will be exculpated) . . . ."); *In re Genesis Health Ventures,* Inc., 266 B.R. 606–07 (Bankr. D. Del. 2001) ("[T]he officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the reorganization."). The same logic is also applicable to third party releases of the Debtors' professionals who, like the Debtors' directors and officers, will be protected by the exculpation provision. *See Wash. Mut.*, 442 B.R. at 354.

18. The Debtors have the burden of justifying the validity of the non-consensual third party releases for each and every party to be released. Because an evidentiary predicate is necessary to approve the third party releases, the U.S. Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

**B. Debtors' Releases**

19. The Plan provides releases by the Debtors and their estates of many non-debtor parties. Pursuant to this Court's decision in *Tribune*, 464 B.R. 126 (Bankr. D. Del. 2011), and *Washington Mutual,* 442 B.R. 314 (Bankr. D. Del. 2011), among others, the five factors set forth in In re *Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) should be considered to determine whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities. *See Tribune* 464 B.R. at 186; *Wash. Mut.*, 442 B.R. at 346; *In re Spansion,* 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004).

20. In the present cases, neither the Plan nor the Disclosure Statement address whether any of the *Zenith* factors are met for any of the parties who will receive releases from the Debtors or claimants. Absent a showing, and appropriate finding by the Court, that each proposed Released Party has made a substantial contribution to the Plan,[6] and that the other elements of *Zenith* have been met, the releases given by the Debtors render the Plan not confirmable.

---

[6] An example of a "substantial contribution" can be found in *Coram*, where this Court, after examining the *Zenith* factors, allowed the debtors to release noteholders who had contributed $56 million in funding to the plan, which funds allowed the debtors to repay in full all creditors other than the noteholders, as well as make a significant distribution to the debtors' shareholders. 315 B.R. at 335.

21.    The Debtors have the burden to establish whether the *Zenith* factors have been met as to each of the non-debtors who are the beneficiaries of the Debtor Releases. Because an evidentiary predicate is necessary to approve the Debtor Releases, the U.S. Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

**C.    Proposed Compromise Language is Overbroad**

22.    Plan Section 5.2, entitled Compromise and Settlement of Claims, Interests and Controversies, reads in full as follows:

> "(a) Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest, including with respect to the HoldCo Unsecured Notes Claims, Intermediate HoldCo Unsecured Notes Claims, ASCAP/BMI Settlement Claims, Ongoing Trade Claims, and General Unsecured Claims.
>
> (b) The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities."

23.    The terms satisfaction and release, or the phrase "complete settlement" are synonyms of the term discharge. The Ballentine's Law Dictionary definition of satisfaction is: "The discharge of an obligation; the payment of a debt. A fulfillment of needs. A performance of the terms of an accord." (Ballantine's Law Dictionary 2010). Section 5.2 acts as a discharge

and is not appropriate except as to any creditor who has expressly agreed to a settlement.[7] This is an attempt to rewrite the Bankruptcy Code. A plan may not rewrite the Bankruptcy Code. *See In re Beyond.com*, 289 Bankr. 138 (Bankr. N.D. CA. 2003).

24. Section 1123(b)(3)(A) of the Bankruptcy Code permits a plan proponent to propose: "…the settlement or adjustment of any claim or interest **belonging to the debtor or to the estate.**" (Emphasis added). This provision does not authorize a plan proponent to settle claims against the debtor or estate. That is called a discharge.

25. A Debtor may not do by indirection what it cannot do directly. This principle was most recently restated by the Supreme Court in the case of Law v. Siegel, --- U.S. ---, 134 S. Ct. 1188 (2014). In discussing the principle that Section 105(a) of the Bankruptcy Code may not be used to override explicit mandates of the Bankruptcy Code, the court noted: "That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere." 134 S. Ct. at 1194. Thus here, the attempt to invoke Sections 363 and 1123 to otherwise circumvent the provisions of Chapter 11 and Section 1141(d)(3) is inappropriate.

26. Sections 1129 (a) (1) and (7) of the Bankruptcy Code require a debtor to make distributions pursuant to the priorities of the Bankruptcy Code. The distributions under the Plan are pursuant to the priorities set forth in Chapter 11 and in Section 726 of the Bankruptcy Code and not on any other basis.

---

[7] Here, HPS in its role as DIP lender and as holder of the First Lien Notes has entered into such an agreement. The provision is acceptable as to any claimholder who has expressly agreed to the same but not as to any creditor who has not agreed expressly to compromise its claim. Among other things, this provision in its present form would vitiate the opt-out of any creditor electing to opt out of the proposed releases.

### D. Exculpation

27. Plan Section 10.7 proposes to exculpate parties from conduct taking place during the case. The definition of Exculpated Party includes the Section 1125(e) Parties and Related Parties. The Section 1125(e) Parties and Related Parties are not estate fiduciaries. Including these various entities in the exculpation provision is overbroad. The definition "Exculpated Party" should be revised to remove from it the Section 1125(e) Parties and Related Parties. The list of parties receiving exculpation should be limited to those parties who served in the capacity of estate fiduciaries, *i.e.*, the creditors' committee, its members, estate professionals and the Debtor's directors and officers. *See In re Indianapolis Downs, LLC,* 486 B.R. 286 (Bankr. D. Del. 2013); *In re Tribune Co.,* 464 B.R. 126, 189 (Bankr. D. Del. 2011)*; In re PTL Holdings, LLC*, 2011 WL 5509031 *12 (Bankr. D. Del. Nov. 10, 2011); *In re Washington Mutual Inc.*, 442 B.R. 314, 350 (Bankr. D. Del. 2011). See also *PWS Holding Corp*, 228 F.3d 224 (3d Cir. 2000).

28. It is settled in this District that non-estate fiduciaries are not entitled to exculpation. None of the Section 1125(e) Parties and their Related Parties are estate fiduciaries. To the extent the definition of Exculpated attempts to include them however indirectly, the proviso at the end of Plan Section 1.165(e) should be stricken. It is wholly disingenuous to draft a provision which purports to provide relief to the "…fullest extent permitted by law…" when the law does not permit exculpation of non-estate fiduciaries at all. This misleading language is designed no more than an invitation to unnecessary future litigation. To the extent that the plan proponents desire the protections of Bankruptcy Code Section 1125(e), this provision affects only the solicitation and plan process not the entire case. This protection may be included in a separate plan provision and should not be included within the exculpation clause.

## II. The Plan Violates the Absolute Priority Rule

29. The absolute priority rule, that senior classes of claims be fully satisfied before distributions may be made to the junior classes or interests retained by equity holders, is at the heart of the Chapter 11 process. Ensuring and maintaining the integrity of the absolute priority rule is required for a court to make a good faith finding or to find that a transaction is fair and equitable, be the transaction a sale (*In re Abbotts Dairies*, *supra*, *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), *In re Chrysler, LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), affirmed, *In re Chrysler, LLC*, ⸺ F.3d ⸺, 2009 WL 2382766, 51 Bankr. Ct. Dec. 254 (2d Cir. 2009)), a settlement (*In re Iridium Operating LLC*, 478 F.3d 452 (2007)), or a plan *(In re Armstrong World Industries, Inc.*, supra.).

30. The absolute priority rule is violated when a junior class of claims or interests receives a distribution or retains an interest in a debtor on account of the prepetition claim or interest prior to payment in full of senior classes, absent their consent. In the recent case of *Czyzewski v Jevic Holding Company*, --- U.S. ---, 137 S. Ct. 973 (2017), the Supreme Court explained: "The Code makes clear that distributions of assets in a Chapter 7 liquidation must follow this prescribed order. §§ 725, 726. It provides somewhat more flexibility for distributions pursuant to Chapter 11 plans, which may impose a different ordering with the consent of the affected parties. But a bankruptcy court cannot confirm a plan that contains priority-violating distributions over the objection of an impaired creditor class. §§ 1129(a)(7), 1129(b)(2)."

31. In this case, Class 10 (Intercompany Claims) are classified as unimpaired while senior classes Class 3 (First Lien Notes), Class 4 (Second Lien Notes Claims), Class 5 (Holdco Unsecured Notes Claims), Class 6 (Intermediate HoldCo Unsecured Notes Claims), Class 7 (ASCAP/BMI Settlement Claims), Class 8 (Ongoing Trade Claims) and Class 9 (General Unsecured Claims) are all classified as impaired under the Plan. Class 10 Claims: "…shall be

adjusted, Reinstated, or discharged, to the extent determined to be appropriate by the Reorganized Debtors…".[8]  The approved Disclosure Statement For Second Amended Joint Chapter 11 Plan of Reorganization of LBI Media, Inc., and its Affiliated Subsidiaries filed February 2, 2019 (D.E. 417 "Disclosure Statement") projects dividends ranging from "to be determined to ranges generally not exceeding 10% except for Ongoing Trade Claims which are projected to receive a dividend of up to 98%.

32. On March 11, 2019, the Debtors filed the Declaration of Jane Sullivan of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of Reorganization of LBI Media, Inc. and its Affiliated Debtors ("Sullivan Declaration", D.E. 633).  The Sullivan Declaration reports that Class 4, the Second Lien Notes Claims, rejected the Plan as to all Debtors, as well as some classes of General Unsecured Claims, due in the latter case to a lack of numerosity.  These Classes are senior to those of the Debtors' Intercompany Claims.  The Intercompany Claims are not impaired but the claims of the rejecting senior classes are.

33. Absent the consent of all senior classes of claims, providing unimpaired treatment to a class of insider claims is a patent violation of the absolute priority rule and the Plan may not be confirmed over the rejection by a class of claims.

## **CONCLUSION**

31. The Plan should not be confirmed.  Absent the consent of all senior classes of claims, the Plan violates the absolute priority rule by treating insider claims as unimpaired while impairing virtually all other classes of claims.  Absent appropriate proof of the contributions made by the proposed Releasees, the Third Party Release and Debtor Release should not be

---

[8] Plan section 4.10 (b). Holdco Intercompany Claims, however, will receive a prorata distribution to the extent a claim is a Class 5 or Class 6 Claim. Reinstated is a defined term at Plan 1.139 and: "means rendering a Claim Unimpaired under the Plan pursuant to section 1124(a)(2) of the Bankruptcy Code".

approved. The Debtors' discharge is governed by Section 1141 of the Bankruptcy Code. Federal Rule of Bankruptcy Procedure 9019 should only apply to creditors who have expressly entered into a settlement. Exculpation is limited to estate fiduciaries. Provisions purporting to provide exculpation to non-estate fiduciaries should be stricken.

34. The U.S. Trustee leaves the Debtors to their burden of proof.

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order denying confirmation of the Plan, and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: March 14, 2019
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**Region 3**

By: */s/ David L. Buchbinder*
David L. Buchbinder, Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
david.l.buchbinder@usdoj.gov