**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------x
In re:                                              :
                                                    :   Chapter 11
                                                    :
LBI MEDIA, INC., *et al.*                           :   Case No. 18–12655 (CSS)
                                                    :
            Debtors.[1]                             :   (Jointly Administered)
                                                    :
                                                    :   Objection Deadline: Apr. 2, 2019 at 4:00 p.m. (ET)
                                                    :   Hearing Date: Apr. 25, 2019 at 1:00 p.m. (ET)
                                                    :
------------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO
11 U.S.C. § 1121(d) FOR ENTRY OF AN ORDER (I) EXTENDING
THEIR EXCLUSIVE PERIODS AND (II) GRANTING RELATED RELIEF**

    LBI Media, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**" or "**LBI**"), hereby submit this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), extending the exclusive period during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof. Specifically, the Debtors seek to (a) extend their exclusive period to file a chapter 11 plan (the "**Exclusive Filing Period**") for each Debtor, through and including July 19, 2019, and (b) extend their exclusive period to solicit acceptances of a chapter 11 plan (the "**Exclusive Solicitation Period**," and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: LBI Media, Inc. (8901); Liberman Broadcasting, Inc. (8078); LBI Media Holdings, Inc. (4918); LBI Media Intermediate Holdings, Inc. (9635); Empire Burbank Studios LLC (4443); Liberman Broadcasting of California LLC (1156); LBI Radio License LLC (8905); Liberman Broadcasting of Houston LLC (6005); Liberman Broadcasting of Houston License LLC (6277); Liberman Television of Houston LLC (2887); KZJL License LLC (2880); Liberman Television LLC (8919); KRCA Television LLC (4579); KRCA License LLC (8917); Liberman Television of Dallas LLC (6163); Liberman Television of Dallas License LLC (1566); Liberman Broadcasting of Dallas LLC (6468); and Liberman Broadcasting of Dallas License LLC (6537). The Debtors' mailing address is 1845 West Empire Avenue, Burbank, California 91504.

together with the Exclusive Filing Period, the "**Exclusive Periods**") through and including September 17, 2019.  In support of this Motion, the Debtors respectfully state as follows:

### Preliminary Statement

1. The Debtors commenced these chapter 11 cases to accomplish a comprehensive financial restructuring that, among other things:  (i) deleverages their capital structure and better positions the Debtors to compete in the highly competitive television and radio broadcasting and production industry; (ii) maximizes recoveries for the Debtors' economic stakeholders; and (iii) preserves more than 1,000 jobs and maintains key customer and vendor relationships that are critical to the Debtors' businesses.  The Debtors have made significant progress towards these goals and are seeking approval of their proposed plan of reorganization, with a confirmation hearing scheduled to commence just four months after filing chapter 11 petitions.

2. Since the Petition Date (as defined herein), the Debtors and their advisors have achieved a great deal, including:

   (a) obtaining approval for the Debtors' $38 million debtor-in-possession financing facility (the "**DIP Financing**") and use of cash collateral [D.I. 198];

   (b) ensuring a smooth transition into chapter 11 through the approval of first day motions, paying certain critical vendors and on-air talent [D.I. 178], continuing important customer programs [D.I. 179], and honoring wages and benefit programs [D.I. 182];

   (c) filing their schedules of assets and liabilities and statements of financial affairs (the "**Schedules and SOFAs**"), which required review and analysis of the claims, assets, and contracts of each of the Debtors [D.I. 206-241, 429-432];

   (d) establishing claims bar dates to facilitate the timely administration of claims pools [D.I. 184], and reconciling the numerous claims filed against the Schedules and SOFAs and the Debtors' books and records to estimate the Debtors' liabilities;

(e) conducting a comprehensive marketing process to solicit bids for all or some of the Debtors' assets through a sale or an alternative plan transaction, providing all stakeholders with the opportunity to bid for the Debtors' businesses;

(f) filing a joint plan of reorganization [D.I. 621] (as may be amended, modified, or supplemented from time to time, the "**Plan**");

(g) filing and obtaining Court approval of a disclosure statement for the Plan [D.I. 417] (the "**Disclosure Statement**"), and completing solicitation of votes on the Plan;

(h) negotiating settlements with major creditor constituencies, including the official committee of unsecured creditors (the "**Creditors' Committee**"), and the holders of those certain 11% Senior PIK Toggle Notes due April 30, 2022 (the "**Intermediate HoldCo Unsecured Noteholders**"), which are reflected in the Plan;

(i) engaging with the office of the United States Trustee and creditor constituencies throughout the case, including attending a meeting pursuant to section 341 of the Bankruptcy Code (as defined below); and

(j) paying the Debtors' postpetition bills as they become due [*see* D.I. 137, 413, 590].

3. The Debtors' Plan enjoys the support of the Debtors' key stakeholders, including (i) the Creditors' Committee, (ii) the sole holder of those certain 10% Senior Secured notes due 2019 (the "**First Lien Noteholders**"), and (iii) the holder of substantially all of the Intermediate HoldCo Notes. The Plan also received widespread support from the Debtors' unsecured creditors that voted on the Plan. *See Declaration of Jane Sullivan of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Case on the Second Amended Joint Chapter 11 Plan of Reorganization of LBI Media, Inc. and its Affiliated Debtors*, Ex. A (Tabulation Summary) [D.I. 633] (the "**Voting Report**").

4. The widely-supported Plan, which enjoys the support of nearly all impaired classes other than the Debtors' junior bondholders, is the product of arms' length, extensive negotiations among these parties (the "**Global Plan Settlement**") that was completed in multiple stages. Prior to the Petition Date, the Debtors entered into a restructuring support agreement with

the First Lien Noteholders, commencing the Chapter 11 Cases with strong stakeholder support, committed exit capital, and a powerful market message.  After the Petition Date, the Debtors and the First Lien Noteholders continued to negotiate and modify the strategic transactions contemplated by the Plan and, subsequently, in connection with the approval of the Disclosure Statement, the Debtors reached a settlement with the holder of substantially all of the outstanding Intermediate HoldCo Unsecured Notes.  More recently, after discovery and investigation and analysis of various claims alleged, and after more hard-fought negotiations, the Debtors reached a settlement with the Creditors' Committee, which provided for enhanced recoveries to holders of ongoing trade claims and general unsecured claims, who would otherwise recover nothing in a liquidation of the Debtors' business.  As a result, over 99% in dollar amount of ongoing trade claims and general unsecured claims voted to accept the Plan.  *See* Voting Report, Ex. A (Tabulation Summary).

5. The Debtors are committed to confirming and consummating the Plan.  The Confirmation Hearing, however, is scheduled to begin on March 25, 2019, after the expiration of the current Exclusive Filing Period.  The effectiveness of the Plan will not occur until regulatory approvals are obtained thereafter.  Accordingly, the Debtors seek a 120-day extension of the Exclusive Filing Period and the Exclusive Solicitation Period to July 19, 2019 and September 17, 2019, respectively, without prejudice to their right to seek a further extension following either confirmation or denial of confirmation of the Plan.

6. The Debtors respectfully submit that the relief requested herein should be granted.

**Case Background**

7. On November 21, 2018 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 6, 2018 the United States Trustee for the District of Delaware appointed the Creditors' Committee [D.I. No. 133]. No trustee or examiner has been appointed in these Chapter 11 Cases.

8. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

9. The Debtors commenced these chapter 11 cases on a prearranged basis with the support of their first lien lender, HPS Investment Partners, LLC ("**HPS**") which has provided debtor-in-possession financing and committed to supporting a value-maximizing chapter 11 plan that will preserve the going-concern value of LBI's business. Consistent with their obligations under that certain *Restructuring Support Agreement*, dated as of November 20, 2018, the Debtors have filed the Plan.

10. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Brian Kei in* Support *of the Debtors' Chapter 11 Petitions and First Day Relief* [D.I. 13] and the Disclosure Statement [D.I. 417].

**Jurisdiction and Venue**

11. The Court has jurisdiction over the Debtors, their estates, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

12. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan. *See* 11 U.S.C. § 1121(b) ("Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter."). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has a 180-day period from its petition date to solicit acceptance of its plan. 11 U.S.C. §11 1121(c)(3). The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on March 21, 2019, and May 20, 2019, respectively.

13. By this Motion, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors request entry of an order extending their Exclusive Filing Period for 120 days through and including July 19, 2019, and their Exclusive Solicitation Period for approximately 120 days through and including September 17, 2019, without prejudice to the Debtors' rights to seek additional extensions of such periods.[2]

---

[2] Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." Here, this Motion was filed prior to the expiration of the Exclusive Periods. Accordingly, such periods are automatically extended until the Court has an opportunity to consider the Motion.

**Basis for Relief**

14. Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods "for cause."[3] The Debtors may seek extensions of the Exclusive Periods at any time before its expiration. "[I]f a motion to extend the time to take any action is filed before the expiration of the period prescribed by the [Bankruptcy Code, Bankruptcy Rules, Local Rules] or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." Local Rule 9006-2; *see, e.g., In re Matter of CPM Energy Sys., Inc.*, 103 B.R. 508, 508 (Bankr. D. Del. 1989) (noting that an extension request made on the 119th day of the original 120–day period established by statute was timely).

15. The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the Exclusive Periods. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

16. In determining whether cause exists to extend a debtor's exclusive periods, a bankruptcy court may consider a variety of factors to assess the totality of circumstances in each case. *See, e.g.*, *First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either

---

[3] *See* 11 U.S.C. § 1121(d) ("[O]n the request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

reduce or increase that period of exclusivity in its discretion."); *In re Borders Group, Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity"); *In re Adelphia Comm. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

    17.    These factors include, without limitation:

  i. the size and complexity of the debtor's case;
  ii. the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
  iii. the existence of good faith progress towards reorganization;
  iv. the fact that the debtor is paying its bills as they become due;
  v. whether the debtor has demonstrated reasonable prospects for filing a viable plan;
  vi. whether the debtor has made progress in negotiations with its creditors;
  vii. the amount of time which has elapsed in the case;
  viii. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
  ix. whether an unresolved contingency exists.

*See, e.g.*, *Adelphia Comm.*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *In re McLean Indus. Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

18. Not all of these factors are relevant in every case, and a finding that any one of these factors exist may justify extending a debtor's exclusive periods. *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (finding four factors relevant in determining whether cause exists to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (same).

19. As discussed above and below, applying the identified standards to the facts of these Chapter 11 Cases demonstrates that ample cause exists to further extend the Exclusive Periods.

A. **The Debtors' Cases Are Complex**

20. The size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. The legislative history of section 1121(d) of the Bankruptcy Code provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 208 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963. Similarly, "[t]he large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). *See also In re Borders Group, Inc.*, 2011 WL 9155779, *3 (Bankr. S.D.N.Y. June 2, 2011) (citing *In re Texaco, Inc.*, 76 B.R. at 326 and granting extension of exclusivity periods for 120 days); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (noting that factors constituting "cause" for extension of exclusivity periods include "the size and complexity of the case" and "the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan.").

21. The size and complexity of the Debtors' Chapter 11 Cases supports a further extension of the Exclusive Periods. The Debtors operate a national media company that owns or licenses twenty-seven (27) Spanish-language television stations and radio stations producing programming that serves some of the nation's largest media markets and reaches millions of viewers and listeners. The Debtors' Schedules and SOFAs indicate that the Debtors have hundreds of creditors on a consolidated basis, and over 5,000 parties in interest received notice of these Chapter 11 Cases. The Debtors' cases are considered "larger chapter 11 cases" under the *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code By Attorneys in Larger Chapter 11 Cases*, and a fee examiner has been appointed in accordance with the *Amended General Order Regarding Fee Examiners in Chapter 11 Cases with Combined Assets and/or Liabilities in Excess of $100,000,000 Before Judge Christopher S. Sontchi* [D.I. 616].

22. Moreover, the Debtors have been embroiled in protracted litigation with the an ad hoc group of their second lien noteholders (the "**Junior Noteholder Group**") that has carried over into these Chapter 11 Cases, making the cases unusually complex. The Debtors have tried, unsuccessfully, to settle with the Junior Noteholder Group multiple times both prepetition and postpetition. Indeed, the Debtors have been engaged in various disputes with the Junior Noteholder Group throughout these Chapter 11 Cases and, in advance of the Confirmation Hearing, have produced over 40,000 documents and have had a large number of their officers, directors, and advisors deposed in connection with Plan Confirmation.[4] Litigation by the Junior

---

[4] Disputes included objections to the DIP Financing [D.I. 71] and Disclosure Statement [D.I. 293], and the filing of an adversary proceeding (Adversary Case No. 19-50007-CSS *LBI Media, Inc., et al. v. Caspian Select Credit Master Fund, LTD. et al.*) and a motion to obtain derivative standing [D.I. 334].

10

Noteholder Group prevented confirmation of the Debtors' Plan on a timeline shorter than the short one on which the parties are currently operating.

23. Nearly every aspect of these Chapter 11 Cases has been highly complex and contested, and the Debtors believe that this factor alone warrants extension of their Exclusive Periods.

B. **The Debtors Continue to Make Good Faith Progress Towards Reorganization**

24. The progress towards restructuring and the length of time a case has been pending are considerations when determining whether there is "cause" to justify an extension of a debtor's exclusivity periods. *See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. at 183 (granting an extension because the debtor almost completed the chapter 11 plan). When determining whether there is sufficient progress, courts consider the success in negotiations with the creditors and other stakeholders. *See In re Pine Run Tr., Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (allowing a ninety-day extension because debtors were close to concluding negotiations that were critical to reorganization); *In re Swatara Coal Co.*, 49 B.R. 898, 899 (Bankr. E.D. Pa. 1985) (authorizing an extension in light of the reasonable possibility that necessary negotiations will be commenced and concluded); *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000) (showing cash flow that was better than anticipated under the business plan was progress to warrant a further extension).

25. As discussed above, the Debtors have made substantial progress towards reorganization in the mere four months since the Petition Date. The Debtors have stabilized their business, proposed the Plan, negotiated settlements with key economic stakeholders, obtained approval of the Disclosure Statement, and completed the solicitation of votes on the Plan with at least one impaired accepting class at each Debtor voting to accept. Additionally, the Debtors

11

conducted a parallel marketing process for value-maximizing alternatives to the reorganization transaction contemplated by the Plan. Simultaneously, they responded to the litigation brought by the Junior Noteholder Group that has the singular goal of disrupting their reorganization process. Progress in these Chapter 11 Cases weighs decisively in favor of extending the Exclusive Periods.

C.     **The Requested Extension Has a Proper Purpose**

26.    The Exclusive Periods should give an "opportunity . . . to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business." *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 133 (D.N.J. 1995). When granting an extension, there should be a reasonable prospect of filing a viable plan. *See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002) (approving an extension because the debtors had a reasonable probability of a successful reorganization). The requested extension should not be for an improper purpose, such as pressuring creditors. *See, e.g.*, *In re Serv. Merch. Co., Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000) (finding no improper purpose without objections suggesting otherwise).

27.    This is the Debtors' first request for extensions of the Exclusive Periods and the Debtors are not making this request to delay these Chapter 11 Cases and, in turn, pressure creditors. The Debtors' relationship with almost all key economic stakeholders, is, and has been throughout these cases, cooperative, and constructive. The exception has been the Junior Noteholder Group, which is subject to a binding and enforceable intercreditor agreement. The Debtors have attempted to work constructively with the Junior Noteholder Group, providing them with an opportunity to participate in the marketing process as well as the option of refinancing the First Lien Notes under the Plan. The request for extending the Exclusive Periods is not a

negotiation tactic. Rather, it is a request that is fully consistent with the intent and purpose of section 1121 of the Bankruptcy Code.

**D.      The Debtors Are Current On Payment of Postpetition Administrative Expenses**

28.     In determining whether to grant an extension of exclusivity, courts also assess a debtor's liquidity and whether the debtor continues to pay its debts as they become due. *See In re Texaco, Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987).

29.     The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors continue to pay all ongoing, ordinary course expenses and remain focused on assuring that all administrative expenses are paid on time. Accordingly, this factor weighs in favor of granting an extension of the Exclusive Periods.

**E.      Relatively Little Time Has Elapsed Since These Chapter 11 Cases Were Commenced**

30.     This is the Debtors' first request for an extension of the Exclusive Periods. The request comes less than four (4) months into these Chapter 11 Cases. Considering the contingencies and challenges facing the Debtors at the outset of these cases, the Debtors have proceeded through these Chapter 11 Cases with speed and efficiency. For all of the reasons set forth above, the facts and circumstances of these cases demonstrate that sufficient cause exists to grant the requested relief.

**F.      The Debtors Have Proposed A Viable Plan**

31.     As discussed, the Debtors have already proposed and solicited votes on the Plan. The voting results indicate that every voting class, with the exception of the Classes of overlapping holders of Second Lien Notes Claims and HoldCo Unsecured Notes Claims (each as defined in the Plan), supports the Plan, and at least one impaired class at each Debtor has voted to

accept the Plan. The Plan provides the Debtors with the means to emerge from chapter 11 as a viable, competitive business.

## Conclusion

32. Given the reasonable extensions requested under the circumstances, the intent and purpose of section 1121 of the Bankruptcy Code will be squarely met if the Court grants the relief requested herein.

## Notice

33. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Creditors' Committee (iii) counsel for the DIP Agent, the DIP Lenders, and the Consenting First Lien Noteholders; (iv) counsel to the First Lien Trustee; (v) counsel to the Collateral Trustee for the First Lien Notes; (vi) counsel to the ad hoc group of Second Lien Noteholders; (vii) counsel to the Indenture and Collateral Trustee for the Second Lien Notes; (viii) Trustee for the Intermediate HoldCo Notes; (iv) Trustee for the HoldCo Notes; (x) counsel to the HoldCo Noteholders; (xi) the Securities and Exchange Commission; (xii) the Internal Revenue Service; (xiii) the United States Attorney's Office for the District of Delaware; and (xiv) any other party that has requested notice pursuant to Bankruptcy Rule 2002.

## No Previous Request

34. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 19, 2019
      Wilmington, Delaware

                              */s/ Megan E. Kenney*
                              RICHARDS, LAYTON & FINGER, P.A.
                              Daniel J. DeFranceschi (No. 2732)
                              Zachary I. Shapiro (No. 5103)
                              Brendan J. Schlauch (No. 6115)
                              Megan E. Kenney (No. 6426)
                              One Rodney Square
                              920 North King Street
                              Wilmington, Delaware 19801
                              Telephone: (302) 651-7700
                              Facsimile: (302) 651-7701

                              -and-

                              WEIL, GOTSHAL & MANGES LLP
                              Ray C. Schrock, P.C.
                              Garrett A. Fail
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              Facsimile:   (212) 310-8007

                              *Attorneys for Debtors and Debtors in Possession*